**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **ALBERT LAW,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HILTON DOMESTIC OPERATING COMPANY, INC.,** | ) |
| | ) |
| and | ) |
| | ) |
| **HRIP MILLER & RHOADS ACQUISITION, LLC,** | ) |
| | ) |
| and | ) |
| | ) |
| **MILLER & RHOADS RESIDENTIAL CONDOMINIUM ASSOCIATION, INC.,** | ) CASE NO. 3:20-cv-00145 |
| | ) |
| and | ) |
| | ) |
| **MILLER & RHOADS RESIDENTIAL ACQUISITION, LLC,** | ) |
| | ) |
| and | ) |
| | ) |
| **RED COATS, INC.,** | ) |
| | ) |
| and | ) |
| | ) |
| **JOHN DOE,** | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT HRIP MILLER & RHOADS ACQUISITION, LLC'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant HRIP Miller & Rhoads Acquisition, LLC[1] (hereinafter "HRIP"), by its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby states as follows for its Memorandum in Support of its Motion to Dismiss Plaintiff Albert Law's ("Mr. Law") Complaint:

## I.     Introduction

In his Complaint, Mr. Law, an African-American man, alleges that he was a guest at the Hilton Richmond Downtown on March 4, 2018, and that during his stay, John Doe – a security guard employed by Red Coats, Inc. ("Red Coats") – approached him and asked for identification and verification that he "belonged" at the hotel.  Mr. Law then complained to the front desk and others, and was allegedly told that he "fit the homeless profile."  Thereafter, Mr. Law continued his stay, apparently without incident.  He was not removed from the hotel, law enforcement was not called, and his stay was not interrupted.  The essence of Mr. Law's action is that a security guard asked him a question, after which he completed his hotel stay without further incident.

On the basis of these allegations, Mr. Law asserts claims for race discrimination under 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000a ("Title II").  However, these claims fail because Mr. Law was not denied accommodations or any benefit of his contract with the hotel.  Mr. Law also asserts a claim under Virginia's hate crimes statute, Va. Code § 8.01-42.1, but because Mr. Law does not allege that a hate crime occurred, that claim must be dismissed with prejudice as well.

---

[1] Counsel for Mr. Law have agreed to dismiss Miller & Rhoads Residential Acquisition, LLC (which does not exist) and Miller & Rhoads Residential Condominium Association, Inc. (which does not own or manage the hotel in question) from this matter.  Those entities have not been served, and the instant motion is not brought on behalf of either entity.

## II.     Summary of Plaintiff's Relevant Allegations[2]

Mr. Law alleges that he is an African-American male, and that he was a guest at the Hilton Downtown Richmond on March 4, 2018. Pl.'s Compl., at ¶¶ 4-12, ECF No. 1. After checking in, Mr. Law claims that he went to the hotel lobby to wait for a colleague. *Id.* at ¶ 14. Mr. Law alleges that he was "surrounded by white guests" in the lobby, though he does not approximate how many other guests were present. *Id.* at ¶ 15. There, Mr. Law waited for an unspecified length of time. *See generally id*.

At some point, Mr. Law claims that John Doe, a security guard employed by Red Coats, approached him, demanded identification, and asked if he "belonged there." *Id.* at ¶¶ 15-17. According to Mr. Law, he was the only person in the lobby to be questioned in this manner. *Id.*

Thereafter, Mr. Law complained to the front desk and the "Hilton corporate office" about his interaction with John Doe, and was told by "management" – he does not specify who – that he "fit the homeless profile." *Id*. at ¶ 18. However, Mr. Law does not and cannot allege that he was ejected from the hotel, that law enforcement was contacted, or even that he cut his stay short.

On the basis of these allegations, Mr. Law alleges that he was discriminated against on the basis of race, and denied the "use and enjoyment of the benefits, privileges, terms and conditions of contract," as well as "the use and enjoyment of accommodations" provided to guests who are not African-American. *Id*. at ¶¶ 20-21. He seeks damages for these alleged violations; however, he does not explain how he was harmed.

---

[2] HRIP denies many of the allegations set forth in this section and recites them only for the purpose of this motion to dismiss.

### III. Legal Standard

Rule 12(b)(6) is designed to test the sufficiency of a complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). When challenged by a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the complaint must "state a claim that is 'plausible on its face' rather than 'conceivable.'" *Atlantic Bulk Carrier Corp. v. Milan Exp. Co., Inc*., No. 3:10-cv-103, 2010 WL 2929612, at *4 (E.D. Va. 2010) (citing *Twombly*, 550 U.S. at 556). Facial plausibility is met when the Court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The "court will not assume that the plaintiff can prove facts that are not alleged or that the defendants have violated the law in ways that have not been alleged." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 498 (E.D. Va. 2003) (citation omitted). Furthermore, courts need not "accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Moore v. Commonwealth Trs., LLC,* No. 3:09-cv-731, 2010 WL 4272984, at *2 (E.D. Va. 2010) (internal citations omitted). In addition, courts "need not accept as true unwarranted inferences" or "unreasonable [conclusions or] arguments." *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A "pleading that offers 'legal conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

The complaint must plead specific facts to "allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, et al. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950). "Without such 'heft,' the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are 'merely consistent with a defendant's liability' fail to nudge claims 'across the finish line from conceivable to plausible.'" *Id.*

IV. **Argument**

   a. **Mr. Law's Section 1981 Claim Must Be Dismissed with Prejudice Because He Did Not and Cannot Allege That He Was Denied Accommodations On the Basis of Race, or For Any Other Reason.**

In his Complaint, Mr. Law alleges that HRIP and others violated Section 1981 when John Doe allegedly approached him in the lobby, requested identification, and asked Mr. Law if he "belonged there." Pl.'s Compl., at ¶ 42-44. However, Mr. Law's allegations that he faced <u>intentional</u> discrimination <u>because of his race</u> are entirely conclusory, and in any event, it is uncontested that he was not denied any accommodations. As a result, Mr. Law's allegations are insufficient to state a claim under Section 1981, and this claim should be dismissed with prejudice.

Under Section 1981, a plaintiff alleging discrimination in hotel accommodations must make factual allegations that, if true, plausibly show that he: "(1) is a member of a protected class, (2) sought to enter into or had a contract with a hotel for accommodations, (3) met the hotel's standard requirements for occupancy, and (4) was denied accommodations that were available to guests outside of the protected class." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). Furthermore, Plaintiff must plead that race was the <u>but-for cause</u> of the alleged denial. As the U.S. Supreme Court recently held in *Comcast Corp. v. National Assn. of*

*African American-Owned Media, et al.*, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." 140 S.Ct. 1009, 1019 (2020).

Here, Mr. Law's allegations fall short of plausibly showing that he was denied accommodations that were made available to guests outside the protected class, and furthermore lack the factual heft to show that race was the but-for cause of John Doe's actions, or that those actions were tantamount to <u>intentional discrimination</u> in the first place. Indeed, Mr. Law alleges only that John Doe approached him in the lobby, asked if he "belonged" there, and asked for identification. Although Mr. Law certainly took umbrage at the interaction, he does not claim that John Doe physically accosted him, used racial slurs, detained him, contacted law enforcement, or took any tangible action to impede his hotel stay. Rather, Mr. Law makes clear through what he <u>does not allege</u> that after John Doe asked him the questions at issue, Mr. Law completed his hotel stay without incident. Therefore, Mr. Law failed to satisfy his burden of plausibly alleging that he was denied accommodations by HRIP.

Furthermore, although Mr. Law claims that John Doe did not question the white patrons in the lobby, such an isolated, hypothetical discrepancy does not plausibly establish that race was the but-for cause of the interaction at issue. There are innumerable reasons that could have caused John Doe to approach Mr. Law,[3] yet instead of providing the factual heft to plausibly show that race was the true cause, he instead resorts to conclusory pronouncements inadequate to survive dismissal in light of *Comcast*.

---

[3] By way of example, perhaps John Doe intended to question other guests, but Mr. Law was closest to his position, and therefore first to be questioned.

Instead, as pointed out by Red Coats in its Motion to Dismiss (ECF No. 11), Mr. Law's allegations reflect, in essence, nothing more than an unpleasant interaction initiated by John Doe. Even assuming that race was the but-for cause of that exchange, questions alone are not tantamount to a denial of accommodations: the law "does not blindly ascribe to race all personal conflicts between individuals of different races." *Hawkins v. Pepsi Co., Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Indeed, Section 1981 "is not a general civility code," and unpleasantness alone is insufficient to state a claim. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (finding that, because Section 1981 is not a general civility code, mere mistreatment and unpleasantness in a successfully consummated consumer transaction does not state a claim).

Because "the Fourth Circuit has cautioned against indulging in the kind of claim that is being asserted here," this Court should dismiss Mr. Law's Complaint with prejudice. *Sherman*, 317 F.Supp.2d at 615 (finding no violation of § 1981 or Title II in similar circumstances where an African-American male was escorted to his room to retrieve and produce his identification before being issued a replacement room key) (citing *Hawkins*, 203 F.3d at 282 ("Law does not blindly ascribe to race all personal conflicts between individuals of different races.")).

**b. Mr. Law's Title II Claim Fails for the Same Reasons as His Section 1981 Claim, and Because He Cannot Show His Entitlement to Injunctive Relief.**

Title II of the Civil Rights Act of 1964 "creates a private cause of action to remedy discrimination in public accommodations affecting interstate commerce. Only injunctive and declaratory relief (and attorneys' fees) may be awarded to a prevailing plaintiff." *Sherman*, 317 F.Supp.2d at 616 (citing *Newman v. Piggie Park Enterprises*, 390 U.S. 400 (1968)). The core focus of Title II is the "denial to plaintiff of full and equal enjoyment of the services offered by

the establishment;" therefore, such claims are analyzed under the same framework as Section 1981 claims, discussed above. *See id.*; *see also Bobbitt by Bobbitt v. Rage, Inc.*, 19 F.Supp.2d 512, 521-22 (W.D.N.C. 1999). As a result, Mr. Law's Title II claim fails for the same reasons discussed above; namely, that he was not denied accommodation based on his race, or for any other reason.

Furthermore, because Title II plaintiffs may only recover injunctive and declaratory (i.e., prospective) relief, Mr. Law was required to allege that there was a "real and immediate threat" that he <u>would be wronged again</u>. *Carroll v. Roanoke Valley Community Credit Union*, 7:17-cv-469, 2018 WL 2921106, at *3 (W.D. Va. Jun. 11, 2018) (quoting *Daniels v. Arcade, L.P.*, 477 Fed.Appx. 125, 129 (4th Cir. Apr. 24, 2012)). However, Mr. Law did not allege any intent to return to the Hilton Richmond, nor can he otherwise show any threat – must less a "real and immediate" one – that he could be wronged by HRIP in the future. As a result, Mr. Law lacks Article III standing to pursue this action, and he did not and cannot state a claim for relief under Title II. *See, e.g., James v. American Airlines, Inc.*, 247 F.Supp.3d 297, 305 (E.D.N.Y. 2017) (stating that "[t]o show standing for prospective relief, a plaintiff must plead and prove a 'real and immediate threat of repeated injury'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Therefore, Mr. Law's Title II claim must be dismissed.

### c. Mr. Law Did Not State a Plausible Claim for Relief Under Virginia's Hate Crime Statute.

Finally, Mr. Law alleges a violation of Virginia's hate crime statute, Va. Code § 8.01-42.1. Specifically, Mr. Law claims – largely without explanation – that John Doe committed a

hate crime when he approached him in the lobby and asked if he "belonged there."[4] However, because asking a question – no matter how negatively it is received – does not fall within the ambit of Virginia's hate crime statute, or even within the realm of constitutionally-proscribable speech – Mr. Law cannot state a claim on which relief can be granted.

Virginia's hate crime statute creates a cause of action "for any person who is subjected to acts of (i) intimidation or harassment," violence, or vandalism, when such acts are "motivated by racial, religious, or ethnic animosity." Va. Code § 8.01-42.1(A). Given this high standard, such claims are understandably rare, and implicate conduct – and not mere speech – far more severe than reflected by the allegations in this case. *See Sines v. Kessler*, 324 F.Supp.3d 765, 800 (W.D. Va. 2018) (finding a potential violation in response to the Charlottesville "Unite the Right" rally, involving specific allegations that the plaintiff was surrounded, beaten with weapons and torches, doused with an unknown liquid, and taunted with Holocaust references); *Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864, at *7 (E.D. Va. Nov. 17, 2017) (finding a violation where defendants "used racial slurs and physically attacked [the plaintiffs] because of their race"); *Berry v. Target Corp.*, 214 F.Supp.3d 530, 535 (E.D. Va. 2016) (finding a violation where defendant's employee "harassed plaintiff based on racial animus because he apprehended her, used a racial slur, and later implied that African–Americans came into [the store] to steal"); *Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991), *on reh'g*, 974 F.2d 1408 (4th Cir. 1992) (finding a violation where a skating rink, which was under a consent decree for denying

---

[4] It should be noted that, in Paragraph 62 of the Complaint, Plaintiff claims that John Doe "told [Mr. Law] that he did not 'belong' in the Hotel's lobby." However, this framing appears nowhere else in the Complaint, where it is clear that John Doe allegedly asked Mr. Law if he belonged in the lobby.

equal access to public accommodations, singled the plaintiff out for discriminatory treatment and called the police on him).

This treatment aligns with constitutional boundaries, as well as the statute's focus on <u>acts</u>, and not utterances.  Indeed, "intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."  *Kessler*, 324 F.Supp.3d at 801.  Furthermore, harassing <u>speech</u> is largely outside the bounds of constitutionally proscribable conduct.  *See, e.g. R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382-83 (1992) (recognizing that constitutional limits on speech content are limited to obscenity, fighting words, and defamation).  Therefore, Virginia's hate crime statute cannot be interpreted to prohibit disfavored speech, or a brief interaction between two members of different races, and should instead be interpreted in accordance with the above-cited cases to prohibit severely harassing <u>acts</u> with explicit racial components.  Surely it is not a hate crime to ask someone for their key card.

It is clear, based on the above, that Mr. Law does not state a claim under Virginia's hate crime statute.  Unlike the allegations of threats, detainment, police involvement, and physical violence in the above cases, Mr. Law merely alleges that John Doe approached him and asked questions.  Pl.'s Compl. at ¶¶ 15-16.  He does not claim that John Doe employed physical violence, threats, detainment, or that he involved law enforcement.  In this way, Mr. Law claims that John Doe employed <u>speech</u> he found objectionable, but not the kind of harassing or intimidating <u>acts</u> proscribed by Virginia's hate crime statute.  As a result, this Court should dismiss Count III of the Complaint with prejudice.

## V. **Conclusion**

For the reasons stated above, and those that may be stated during any oral argument, Defendant HRIP Miller & Rhoads Acquisition, LLC respectfully requests that its Motion to Dismiss be granted and that Mr. Law's claims be dismissed with prejudice.

Respectfully submitted,

**HRIP Miller & Rhoads Acquisition, LLC**

/s/ *J. Clay Rollins*
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA 23219
Tel.: (804) 663-2332
Fax: (855) 843-1809

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 20th day of July, 2020, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to counsel of record in this matter, including:

Jonathan E. Halperin (Esq. VSB No. 32698)
Andrew Lucchetti, Esq. (VSB No. 86631)
Halperin Law Center, LLC
5225 Hickory Park Dr., Ste B
Glen Allen, Virginia 23059
Telephone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
andrew@hlc.law

Mark McDougal, OSB # 890869
Jason Kafoury, OSB # 091200
411 SW Second Ave., Ste. 200
Portland OR 97204
Telephone: (503) 224-2647
Facsimile: (503) 224-2673
mcdougal@kafourymcdougal.com
jkafoury@kafourymcdougal.com

*Counsel for Plaintiff*

Kelvin L. Newsome, Esq. (VSB No. 34478)
Rachael L. Loughlin, Esq. (VSB No. 84133)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 403-7110
knewsome@ohaganmeyer.com
rloughlin@ohaganmeyer.com

*Counsel for Defendant Red Coats, Inc.*

               */s/ J. Clay Rollins*
               J. Clay Rollins

                         43531186.1