**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **ALBERT LAW**, | |
| *Plaintiff*, | |
| v. | |
| | **Civil Case No. 3:20-cv-00145** |
| **HILTON DOMESTIC OPERATING COMPANY, INC., HRIP MILLER & RHOADS ACQUISITION, LLC, MILLER & RHOADS RESIDENTIAL CONDOMINIUM ASSOCIATION, INC., MILLER & RHOADS RESIDENTIAL ACQUISITION, LLC, RED COATS, INC., and JOHN DOE,** | |
| *Defendants*. | |

**DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>UNDER CIVIL RULES 12(b)(1), 12(b)(5), AND 12(b)(6)</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.      The Court should dismiss all the claims under Rules 12(b)(1) or 12(b)(6) because
        the Plaintiff lacks standing and the Complaint fails to state a claim for relief. ................. 5

    A.      The Complaint fails to state a claim for relief under 42 U.S.C. §
                1981 (Count I). ....................................................................................................... 5

        i.      The Complaint does not allege that Hilton impaired the
                        Plaintiff's right to make and enforce a contract. ......................................... 5

        ii.     The Complaint does not allege that Hilton intentionally
                        discriminated against the Plaintiff because of his race. ............................. 9

        iii.    The Complaint does not allege that Hilton caused the
                        Plaintiff's alleged harm. .......................................................................... 11

        iv.     The Complaint does not plausibly allege that the other
                        named Defendants were Hilton's agents. .................................................. 13

    B.      The Plaintiff lacks standing to seek relief under 42 U.S.C. § 2000a, and
                in any event, the Complaint fails to state a claim for relief under that
                statute (Count II). ................................................................................................ 14

        i.      The Plaintiff lacks standing because the Complaint does not
                        plead facts to support injunctive relief. .................................................... 14

        ii.     The Complaint does not allege that Hilton denied the
                        Plaintiff access to a public accommodation. ............................................ 17

        iii.    The Complaint does not allege that Hilton intentionally
                        discriminated against the Plaintiff because of his race. ........................... 19

        iv.     The Complaint does not allege that Hilton caused the
                        Plaintiff's alleged harm. .......................................................................... 19

        v.      The Complaint does not allege that the other named
                        Defendants were Hilton's agents. ............................................................ 20

    C.      The Complaint does not state a claim for relief under Va. Code §
                8.01-42.1 (Count III). ......................................................................................... 20

        i.      The Complaint does not allege that Hilton intimidated or
                        harassed the Plaintiff because of his race. ............................................... 20

        ii.     The Complaint does not allege that Hilton or its agents
                        caused the Plaintiff's alleged harm. ......................................................... 23

II.    Alternatively, the Court should dismiss the action against Hilton under
        Rule 12(b)(5) because the Plaintiff did not timely serve the Complaint on
        Hilton. .................................................................................................................... 23

CONCLUSION ............................................................................................................................ 24

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .......................................................13

*Acey v. Bob Evans Farms, Inc.*,
   2014 WL 989201 (S.D. W. Va. Mar. 13, 2014) .............................................. 15-17

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988)..............................................................................10

*Alcresta Therapeutics, Inc. v. Azar*,
   318 F. Supp. 3d 321 (D.D.C. 2018)...................................................................17

*Amir El v. T Mobile*,
   2009 WL 936296 (D. Del. Apr. 6, 2009)..........................................................18

*Anderson v. Gov't of Virgin Islands*,
   947 F. Supp. 894 (D.V.I. 1996) ........................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................10

*Baltimore-Clark v. Kinko's Inc.*,
   270 F. Supp. 2d 695 (D. Md. 2003) ................................................................6, 8

*Bartley v. Virgin Grand Villas*,
   197 F. Supp. 2d 291 (D.V.I. 2002) ...................................................................18

*Bates v. Laurel Grove Baptist Church, Inc.*,
   2017 WL 2888719 (E.D. Va. July 6, 2017).............................................5, 9, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................4

*Bobbitt by Bobbitt v. Rage Inc.*,
   19 F. Supp. 2d 512 (W.D.N.C. 1998) ..............................................................18

*Booth v. Cty. Exec.*,
   186 F. Supp. 3d 479 (D. Md. 2016)..................................................................10

*Bridgeforth v. Am. Educ. Servs.*,
   412 F. App'x 433 (3d Cir. 2011) ........................................................................7

*Carroll v. 1st Advantage Fed. Credit Union*,
   2018 WL 2933411 (E.D. Va. Apr. 9, 2018) ........................................................4

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...................................................................................11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................................................................16

*Collin v. Rector & Bd. of Visitors of Univ. of Virginia*,
    873 F. Supp. 1008 (W.D. Va. 1995) ........................................................................11

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ............................................................................................11

*Cox v. City of Dallas*,
    430 F.3d 734 (5th Cir. 2005) ...................................................................................12

*Daniels v. Dillard's, Inc.*,
    373 F.3d 885 (8th Cir. 2004) ...................................................................................11

*Davis v. Frapolly*,
    717 F. Supp. 614 (N.D. Ill. 1989) .............................................................................9

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ............................................................................................. 5-6

*EEOC v. Chicago Club*,
    86 F.3d 1423 (7th Cir. 1996) ...................................................................................18

*Feeley v. Total Realty Mgmt.*,
    660 F. Supp. 2d 700 (E.D. Va. 2009) ......................................................................13

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ...................................................................................10

*Goode v. Waffle House, Inc.*,
    2006 WL 8438442 (E.D.N.C. Aug. 28, 2006) ...................................................14, 19

*Grigsby & Assocs., Inc. v. City of Shreveport*,
    294 F. Supp. 3d 529 (W.D. La. 2018) .......................................................................5

*Heavener v. Quicken Loans, Inc.*,
    2012 WL 13028627 (N.D.W. Va. Nov. 7, 2012) ......................................................13

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
    17 F.3d 691 (4th Cir. 1994) .....................................................................................16

*Jeffrey v. Home Depot USA, Inc.*,
    90 F. Supp. 2d 1066 (S.D. Cal. 2000) ................................................................. 18-19

*Jerome v. Hertz Corp.*,
  15 F. Supp. 3d 1225 (M.D. Fla. 2014) ...................................................................11

*Jones v. City of Bos.*,
  738 F. Supp. 604 (D. Mass. 1990) .......................................................................20

*Jones v. Commonwealth*,
  276 Va. 121 (2008) ............................................................................................20

*Kelser v. Alcazar Shriners*,
  2007 WL 484551 (M.D. Ala. Feb. 9, 2007) .........................................................16

*Lilly v. Winter*,
  2006 WL 543977 (E.D. Va. Mar. 3, 2006) ...........................................................24

*Lopez v. Target Corp.*,
  676 F.3d 1230 (11th Cir. 2012) ........................................................................ 7-8

*Lunceford v. Commonwealth*,
  2016 WL 6208632 (Va. Ct. App. Oct. 25, 2016)..................................................21

*Mendez v. Elliot*,
  45 F.3d 75 (4th Cir. 1995) ...................................................................................4

*Mirabella v. William Penn Charter Sch.*,
  2017 WL 1062460 (E.D. Pa. Mar. 20, 2017).......................................................16

*Morice v. Hosp. Serv. Dist. #3*,
  2019 WL 1517954 (E.D. La. Apr. 8, 2019) .........................................................17

*Murphy v. Holiday Inns, Inc.*,
  216 Va. 490 (1975) ............................................................................................14

*Nelson v. Brown*,
  2014 WL 4470798 (E.D.N.Y. Sept. 10, 2014) .....................................................12

*Noble v. Brinker Int'l, Inc.*,
  175 F. Supp. 2d 1027 (S.D. Ohio 2001) ..............................................................12

*Padilla-Ruiz v. Commc'n Techs., Inc.*,
  355 F. Supp. 3d 441 (E.D. Va. 2019) .................................................................13

*Parker v. Magna Innertech-Spartanburg*,
  2009 WL 5178014 (D.S.C. Dec. 29, 2009) ..........................................................24

*Paul v. Cheddar's Scratch Kitchen*,
  2020 WL 2598355 (S.D. Ga. Mar. 30, 2020) .................................................. 15-17

*Phany Poeng v. United States*,
    167 F. Supp. 2d 1136 (S.D. Cal. 2001) .................................................................... 17

*Pope v. Fahy*,
    2019 WL 6717423 (S.D.N.Y. Dec. 10, 2019) ......................................................... 12

*Reliable Tax & Fin. Servs., Inc. v. H&R Block E. Tax. Servs., Inc.*,
    212 F. Supp. 2d 592 (E.D. Va. 2002) ................................................................. 4, 24

*RT v. Cincinnati Pub. Sch.*,
    2006 WL 3833519 (S.D. Ohio Dec. 29, 2006) ....................................................... 12

*S.P. v. City of Takoma Park, Md.*,
    134 F.3d 260 (4th Cir. 1998) .................................................................................... 2

*Saleh v. Egglinger Ins. Agency, LLC*,
    2020 WL 1443768 (D.N.J. Mar. 25, 2020) ............................................................. 14

*Salim v. Dahlberg*,
    170 F. Supp. 3d 897 (E.D. Va. 2016) ..................................................................... 22

*Satterfield v. City of Chesapeake*,
    2017 WL 11449568 (E.D. Va. Aug. 31, 2017) ......................................................... 9

*Sewraz v. Nguyen*,
    2011 WL 201487 (E.D. Va. Jan. 20, 2011) ........................................................ 9, 22

*Sines v. Kessler*,
    324 F. Supp. 3d 765 (W.D. Va. 2018) ............................................................... 21-22

*Snoqualmie Indian Tribe v. City of Snoqualmie*,
    186 F. Supp. 3d 1155 (W.D. Wash. 2016) ............................................................... 9

*Sutton v. Commonwealth*,
    228 Va. 654 (1985) ................................................................................................. 21

*Tingler v. Graystone Homes, Inc.*,
    834 S.E.2d 244 (Va. 2019) ...................................................................................... 13

*Tompulis v. HSBC Fin. Corp.*,
    2011 WL 8145410 (E.D. Va. May 23, 2011) ........................................................... 9

*U.S. Council, 33 Degree of the Ancient & Accepted Scottish Rite of Freemasonry*
    *v. U.S. Council of the Ancient Accepted Scottish Rite*,
    792 F. App'x 249 (4th Cir. 2019) ............................................................................. 4

*Williams v. AM Lapomarda*,
    2020 WL 3643466 (E.D. Va. July 6, 2020) (Novak, J.) ................................. *passim*

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ............................................................................... 16

*Zuyus v. Hilton Riverside*,
  439 F. Supp. 2d 631 (E.D. La. 2006) ................................................................... 5, 7

**Statutes**

42 U.S.C. § 1981 ...................................................................................................... *passim*

42 U.S.C. § 2000a ................................................................................................... *passim*

Va. Code § 8.01-42.1 ............................................................................................ 1, 20-23

**Other Authorities**

FED. R. CIV. P. 4(m) ................................................................................................ 4, 23

*Harassment*, BLACK'S LAW DICTIONARY (11th ed. 2019) ......................................... 21

*Intimidation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ........................................ 21

## INTRODUCTION

Taken as true, the allegations in Plaintiff's Complaint describe an encounter with a security guard that, while a negative experience, does not give rise to the federal and state civil rights claims that Plaintiff asserts against Defendant Hilton Domestic Operating Company Inc. ("Hilton").  The Complaint alleges that Plaintiff, an African-American man, stayed at a Hilton-branded hotel in March 2018.  While waiting in the lobby, a security guard (not employed by Hilton) allegedly approached the Plaintiff and asked whether he belonged at the hotel.  The Plaintiff then complained about the encounter, and no other incidents occurred during his stay. He later sued several Defendants, including Hilton, several non-Hilton entities alleged to "own and operate" the hotel, and the company that employed the security guard (Red Coats), for civil rights violations tied to the security guard's questions.

All of Plaintiff's claims fail as a matter of law under Rule 12(b)(6) and should be dismissed with prejudice because, among other reasons, they do not allege any conduct prohibited by the statutes at issue.  These statutes are not general anti-discrimination statutes. Rather, they prohibit racial discrimination in the specific contexts of making and enforcing contracts, accessing public accommodations, and threatening conduct that qualifies as intimidation or harassment.  *See* 42 U.S.C §§ 1981, 2000a, Va. Code 8.01-42.1.  The Complaint does not allege that anyone impaired Plaintiff's contract or prevented him from forming one in the first place.  Nor does the Complaint allege that anyone denied him access to the hotel or threatened him.  Regardless of how the alleged questions from the Red Coats security guard might be characterized, the brief encounter at issue—even with all allegations accepted as true—falls outside the scope of statutorily proscribed conduct.

The claims against Hilton also fail for the additional reason that the Complaint does not tie the alleged misconduct to Hilton either directly or vicariously. Red Coats and Hilton are distinct corporate entities, and the security guard described in the Complaint worked for Red Coats (a named Defendant), not Hilton. The Complaint does not allege that any Hilton personnel participated in the encounter, directed it, or otherwise conspired with the security guard. Indeed, the Complaint alleges that non-Hilton entities "own and operate" the hotel. And while the Complaint includes conclusory allegations that Red Coats was Hilton's "agent" or "employee," courts have held that plaintiffs cannot rely on vicarious liability when suing under the federal statutes here.

Finally, and in the alternative, the Court should dismiss this action because the Plaintiff did not timely serve the Complaint on Hilton. The Federal Rules of Civil Procedure require a plaintiff to serve a complaint within 90 days of filing it. Here, the Plaintiff served Hilton more than six months after filing suit, and he lacks good cause for the three-month-delayed service. By operation of Rules 12(b)(5) and 4(m), the Court should dismiss the case on this independent basis.

## BACKGROUND

The Complaint alleges that the Plaintiff, Albert Law, is an African-American male.[1] ECF No. 1, Compl. ¶ 11. According to the Complaint, Mr. Law checked into a Hilton-branded hotel in downtown Richmond on March 4, 2018. *Id*. ¶ 12. After checking in, Mr. Law went to the hotel lobby to wait for a colleague. *Id*. ¶ 14. While in the lobby, a security guard allegedly approached Mr. Law and asked him if he "belonged there." *Id*. ¶ 15. The guard also asked Mr.

---

[1] Hilton assumes the truth of the Complaint's allegations solely for purposes of this Motion to Dismiss. *See S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 264 (4th Cir. 1998).

Law to produce a room key.  *Id.* ¶ 16.  The Complaint alleges that the security guard did not ask similar questions to white guests in the hotel lobby.  *Id.* ¶¶ 15, 19.  The Complaint states that after Mr. Law complained about this encounter at the front desk and with the Hilton "corporate office," he was told by unnamed "management" that he "fit the homeless profile."[2]  *Id.* ¶ 18.

The Complaint alleges that the security guard who questioned Plaintiff was an employee of Red Coats, not Hilton, and that certain non-Hilton entities "own and operate" the hotel.  *Id.* ¶¶ 6, 8.  The Complaint further alleges that either Hilton or the separate "Property Owner Defendants" had a contract with Red Coats to "provide security services" for the hotel at issue. *Id.* ¶ 7.  The Complaint specifically identifies Red Coats as a separate corporate entity distinct from Hilton.  *Id.*  The Complaint states that the security guard "acted in the course and scope of his employment with Defendant Red Coats," not Hilton.  *Id.* ¶ 8.  And in conclusory fashion, the Complaint alleges that Hilton maintains a policy of profiling guests in its hotel lobbies.  *Id.* ¶ 25.

Approximately two years after the alleged incident at the hotel, Mr. Law sued the Defendants.  The Complaint asserts three claims against all of the Defendants based on federal and state civil rights laws.  *See id.* ¶¶ 38–66.  Hilton now moves to dismiss all the claims under Rules 12(b)(1), 12(b)(5), and 12(b)(6).

### STANDARD OF REVIEW

"Where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Williams v. AM*

---

[2] On the face of the Complaint itself, Plaintiff has not plausibly alleged any statutory violations against Hilton.  With that said, although the Court need not rely on or consider this in resolving the instant Motion, nor is Hilton asking the Court to do so, the following bears emphasis: Hilton does not promote and, in fact, has a zero-tolerance policy against, racism or discrimination of any type.

*Lapomarda*, 2020 WL 3643466, at *6 (E.D. Va. July 6, 2020) (Novak, J.).  "[T]he plaintiff bears

the burden of clearly alleging facts demonstrating" that the court has jurisdiction.  *Id*.  If a

plaintiff lacks standing to seek the relief requested, a defendant can properly seek dismissal for

lack of subject matter jurisdiction under Rule 12(b)(1).  *See U.S. Council, 33 Degree of the*

*Ancient & Accepted Scottish Rite of Freemasonry v. U.S. Council of the Ancient Accepted*

*Scottish Rite*, 792 F. App'x 249, 254 (4th Cir. 2019) ("Ordinarily, courts that find no . . . standing

dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction."); *Carroll v. 1st Advantage*

*Fed. Credit Union*, 2018 WL 2933411, at *2 (E.D. Va. Apr. 9, 2018) ("[A] challenge to standing

must be made pursuant to Rule 12(b)(1).").

Under Rule 12(b)(6), the Court assesses whether the Complaint "state[s] facts sufficient

to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *AM*

*Lapomarda*, 2020 WL 3643466, at *4.  The "factual allegations must be enough to raise a right

to relief above the speculative level, rendering the right plausible on its face rather than merely

conceivable."  *Id*.  The complaint must include "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  The Court "need not accept . . . legal conclusions."  *AM*

*Lapomarda*, 2020 WL 3643466, at *1.

Finally, under Rule 4(m), the plaintiff must serve the complaint on the defendant(s) no

more than 90 days after filing it, and the Court must dismiss the action if the plaintiff does not

timely serve the complaint and lacks good cause for the delay.  *See* FED. R. CIV. P. 4(m).  Rule

12(b)(5) authorizes dismissal for insufficient service of process, including for failure to timely to

serve under Rule 4(m).  *See Mendez v. Elliot*, 45 F.3d 75, 80 (4th Cir. 1995); *Reliable Tax & Fin.*

*Servs., Inc. v. H&R Block E. Tax. Servs., Inc.*, 212 F. Supp. 2d 592, 596 (E.D. Va. 2002).

<u>**ARGUMENT**</u>

**I.     The Court should dismiss all the claims under Rules 12(b)(1) or 12(b)(6) because the Plaintiff lacks standing and the Complaint fails to state a claim for relief.**

    **A.  The Complaint fails to state a claim for relief under 42 U.S.C. § 1981 (Count I).**

"To state a claim under § 1981, a plaintiff must prove the following elements: (1) he belongs to a racial minority group; (2) defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination relates to a contractual relationship covered under § 1981." *Bates v. Laurel Grove Baptist Church, Inc.*, 2017 WL 2888719, at *2 (E.D. Va. July 6, 2017). The § 1981 claim against Hilton fails for four independent reasons because the Complaint does not plausibly allege that (i) Hilton impaired the Plaintiff's right to make and enforce contracts; (ii) Hilton intentionally discriminated against the Plaintiff; (iii) Hilton caused the Plaintiff's alleged injuries; or (iv) that Red Coats was Hilton's agent.

        **i.     The Complaint does not allege that Hilton impaired the Plaintiff's right to make and enforce a contract.**

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 1981(b). "The purpose behind 42 U.S.C. § 1981 was to ban discrimination in the making or enforcement of contracts." *Grigsby & Assocs., Inc. v. City of Shreveport*, 294 F. Supp. 3d 529, 539 (W.D. La. 2018). "Section 1981 does not provide a general cause of action for race discrimination[.] Rather it prohibits intentional race discrimination with respect to *certain enumerated activities*." *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631, 635 (E.D. La. 2006). "Any claim brought under § 1981,

therefore, must initially identify an impaired contractual relationship[] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

The Complaint does not identify any contract that Hilton prevented the Plaintiff from making or enforcing, or identify an impairment of the Plaintiff's contractual relationship with Hilton. For example, the Complaint does not allege that Hilton evicted the Plaintiff from the premises, cancelled his reservation, locked him out of his room, terminated his stay at the hotel, prevented him from making room reservations in the future, or permanently banned him from the premises. Instead, the Complaint alleges only that a security guard asked the Plaintiff whether he belonged at the hotel. Compl. ¶¶ 15–16.

The Complaint also does not allege that Hilton impaired the "benefits, privileges, terms, and conditions of [a] contractual relationship." 42 U.S.C. § 1981(b). Notably, the Complaint does not advance a breach of contract claim against Hilton or identify a contractual provision that Hilton breached. Nor does the Complaint allege that the hotel barred the Plaintiff from using its amenities or common areas. *See* Compl. ¶ 18. Although the Complaint alleges that the conversation between the Plaintiff and the security guard took place in the hotel lobby, the Complaint does not allege that Plaintiff was prevented from using or accessing the lobby or other amenities. Allegations about the Plaintiff's subjective enjoyment of the hotel lobby cannot support a § 1981 claim absent a tangible impairment to a contract. *See Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 700 (D. Md. 2003) (dismissing § 1981 claim because "Plaintiff was not denied services or admittance, asked to leave, or required to prepay at Kinko's. What was affected, according to the facts Plaintiff alleges, was her enjoyment of the contracting *experience*.") (emphasis in original).

Courts have consistently dismissed § 1981 claims against hotels when the only alleged conduct involves insensitive remarks or questions.  For example, in *Zuyus*, a security guard in the hotel lobby asked to search the plaintiff's bag after accusing him of shoplifting.  439 F. Supp. 2d at 634.  The plaintiff refused the search, complained about the incident, and then left the hotel after receiving an apology.  *Id*.  The court held that the alleged facts did not state a § 1981 claim.  "A customer must make a tangible attempt to contract and that attempt must be thwarted by the defendant in order to allege a claim under section 1981."  *Id*. at 635.  The plaintiff did not identify a tangible attempt to contract because "[a]fter his alleged altercation with the defendants, Zuyus left the Hilton and did not return."  *Id*. at 635–36.

Courts employ the same reasoning when addressing § 1981 claims in other contexts.  For example, in *Lopez v. Target Corp.*, 676 F.3d 1230, 1231 (11th Cir. 2012), the plaintiff alleged that a store cashier made derogatory comments to him while he was checking out.  The court affirmed the dismissal of the § 1981 claim because the plaintiff "was able to complete his transaction."  *Id*. at 1234.  Much like the alleged incident here, the court in *Lopez* was not faced "with circumstances where a customer was refused service . . ., was required to contract on different terms, got frustrated and left the store, or was in any other way denied the right to make, enforce, or terminate a contract."  *Id.* at 1235.  Like Mr. Law, the plaintiff's claim in *Lopez* boiled down to the allegation that he was "mistreated," which "cannot establish a § 1981 claim."  *Id*.; *see also Bridgeforth v. Am. Educ. Servs.*, 412 F. App'x 433, 435 (3d Cir. 2011) (use of racial slur "is offensive, but standing alone [] does not state a claim under § 1981").

The Plaintiff cannot distinguish these cases.  In opposing another Motion to Dismiss in this action, the Plaintiff contends that *Lopez* does not apply because it involved a retail store, not a hotel.  ECF No. 22 at 5.  That distinction makes no difference.  *Lopez* explained that the

statutory language requires the plaintiff to show some impairment of his right to complete a transaction, not simply derogatory comments made during the contracting process.  *Lopez*, 676 F.3d at 1234.  The Complaint here does not allege that anyone prevented Mr. Law from making or enforcing a contract.  Even if the security guard's alleged questions impacted Mr. Law's experience at the hotel, an unfortunate encounter does not give rise to a § 1981 claim unless it impairs an existing or prospective contract.  *Kinko's Inc.*, 270 F. Supp. 2d at 700.

The allegations here also differ materially from those in this Court's recent *AM Lapomarda* decision.  In that case, "the parties d[id] not dispute that Plaintiff sought to enter a contractual relationship with Defendants to purchase gasoline and a beverage" at a 7-11 convenience store.  *AM Lapomarda*, 2020 WL 3643466, at *9.  In stark contrast to the allegations here, however, the store manager in *AM Lapomarda* laughed at plaintiff regarding the face veil and sunglasses she wore due to her Islamic faith, "refused to serve her," stated that she may be planning to "rob the store," labeled her a "security risk," affirmatively told her she "should not . . . be in our store," expressed "paranoi[a]" about plaintiff because of "all of the stuff that's going on," mocked her religious attire to other customers, and ultimately called the police to ask that she be removed from the store.  *Id.* at *1–2, *13.  That conduct, including, most critically, the repeated refusal to provide service to the plaintiff, stated a claim because it "interfered with a contractual interest"—the plaintiff's opportunity to buy goods.  *Id*. at *9.  The Complaint here alleges nothing similar.

Regardless of how one characterizes the conversation between the Plaintiff and the security guard, this Court should remain mindful that "§ 1981 is not a general civility code." *Lopez*, 676 F.3d at 1235.  Because the Complaint does not allege that Hilton impaired the Plaintiff's right to make and enforce contracts, the Court should dismiss Count I with prejudice.

8

**ii.    The Complaint does not allege that Hilton intentionally discriminated against the Plaintiff because of his race.**

Count I fails for the additional reason that the Complaint contains no factual allegations that Hilton "intended to discriminate against plaintiff on the basis of race." *Bates*, 2017 WL 2888719, at *2.  The Complaint does not allege that anyone made racially charged comments or referenced the Plaintiff's race during his encounter with the security guard.  Instead, the Complaint repeatedly recites the conclusion that the Defendants discriminated against the Plaintiff because of his race.  *E.g.*, Compl. ¶ 44.  That conclusory assertion, without accompanying facts, does not plausibly allege discriminatory intent.  *Sewraz v. Nguyen*, 2011 WL 201487, at *12 (E.D. Va. Jan. 20, 2011) (conclusory allegation that discrimination was because of race "is insufficient to state a [§ 1981] claim."); *Davis v. Frapolly*, 717 F. Supp. 614, 616 (N.D. Ill. 1989) (same).

The Complaint's vague references to other guests in the hotel lobby do not plausibly plead discriminatory intent.  Under section 1981, a plaintiff may try to show discriminatory intent by alleging that the defendant "treat[ed] him differently than other similarly situated" individuals.  *Satterfield v. City of Chesapeake*, 2017 WL 11449568, at *10 (E.D. Va. Aug. 31, 2017); *see also Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1162 (W.D. Wash. 2016) ("Plaintiffs in discrimination cases may plausibly plead discriminatory intent in several ways.  For instance, plaintiffs commonly allege that a similarly situated individual or entity outside of the plaintiff's protected group received more favorable treatment.").  But the blanket assertion that two people are similarly situated in the context of a discrimination claim is a legal conclusion, not a factual allegation.  *Tompulis v. HSBC Fin. Corp.*, 2011 WL 8145410, at *2 (E.D. Va. May 23, 2011) (determining whether "the facts as alleged" support "the asserted legal conclusion that Plaintiff and Best were similarly situated").  Without any accompanying

facts, the Court should not accept the Complaint's legal conclusion that the other patrons in the hotel lobby were similar to Mr. Law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint contains no factual allegations about the other guests in the hotel lobby from which one could infer that they were similarly situated to Plaintiff. While the Complaint alleges the security guard did not approach or question white guests in the hotel lobby, Compl. ¶¶ 15, 17, 19, the Complaint does not allege any *facts* that provide a basis for comparing the other guests to the Plaintiff. The lack of such factual allegations forecloses Plaintiff's claim. *See Francis v. Giacomelli*, 588 F.3d 186, 195–96 (4th Cir. 2009) (affirming dismissal of § 1981 claim because conclusory allegations that white individuals were similarly situated "are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed"); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (affirming dismissal of § 1981 claim because a "naked allegation that appellees selectively enforced the College rules against plaintiffs because they are black or Latin is too conclusory to survive a motion to dismiss"); *see also Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (dismissing employment discrimination claim because "a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination"); *see also AM Lapomarda*, 2020 WL 3643466, at *13 (noting—in denying a 12(b)(6) motion— plaintiff's allegation that defendant "served similarly situated non-African-American and non-Muslim appearing customers *wearing sunglasses*") (emphasis added).

Because the Complaint does not plausibly allege that Hilton intentionally discriminated against the Plaintiff because of his race, the Court should dismiss Count I with prejudice.

### iii.     The Complaint does not allege that Hilton caused the Plaintiff's alleged harm.

The Complaint contains no allegations that Hilton directly caused the Plaintiff's alleged injuries to support a theory of direct liability.  Section 1981 requires the plaintiff to plead and prove that the defendant was the "but for" cause of the alleged harm.  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Plaintiff's Complaint, however, unambiguously pleads that Hilton did *not* cause the Plaintiff's alleged injuries.  The alleged misconduct occurred when the security guard asked Plaintiff whether he belonged at the hotel.  Compl. ¶¶ 15–16.  The security guard was an employee of Red Coats, not Hilton, and allegedly acted within the scope of his employment with Red Coats, not Hilton.  *Id*. ¶ 8.  The Complaint does not allege that any Hilton personnel conspired with the security guard or directed the conversation between the Plaintiff and the security guard.  Thus, the Complaint fails to allege that Hilton directly caused the Plaintiff's alleged injuries.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) (affirming dismissal of § 1981 claim because defendant at issue did not cause injury).

Nor can the Plaintiff rely on vicarious liability against Hilton.  *See* Compl. ¶ 45 (invoking *respondeat superior*).  Courts have explained that because "[l]iability under §§ 1981 and 1982 requires a showing of *intentional discrimination*," those claims are "seemingly incompatible with *respondeat superior* principles."  *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 888 n.4 (8th Cir. 2004) (emphasis added).  Courts in this Circuit have likewise held that "[t]he Plaintiff must allege direct involvement by Defendant [] because there is no respondeat superior liability under [] § 1981."  *Collin v. Rector & Bd. of Visitors of Univ. of Virginia*, 873 F. Supp. 1008, 1014 (W.D. Va. 1995); *see also Jerome v. Hertz Corp.*, 15 F. Supp. 3d 1225, 1233 (M.D. Fla. 2014) ("Since liability under Section 1981 is premised on personal involvement of a defendant it cannot be

11

imposed vicariously."); *Noble v. Brinker Int'l, Inc.*, 175 F. Supp. 2d 1027, 1042 (S.D. Ohio 2001) (same).

The Complaint's references to Hilton's alleged policy of profiling guests also does not plausibly allege that Hilton caused the Plaintiff's harm.  As explained, the Plaintiff's interaction with the security guard did not violate § 1981.  *See supra* Argument § I.A.i.  Without an underlying violation of the statute, Hilton cannot be liable for maintaining a policy or practice that supposedly encouraged such conduct.  *See Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (to state a claim under § 1981 based on a policy or practice, the complaint must first plausibly allege an "underlying claim of a violation of rights"); *RT v. Cincinnati Pub. Sch.*, 2006 WL 3833519, at *3 (S.D. Ohio Dec. 29, 2006) (holding that there is no policy or practice liability "absent an underlying constitutional violation," and dismissing claim against city because the complaint "failed to state a § 1983 claim against Officer Rhone").

Separately, the Complaint does not recite any facts about the scope and content of the alleged policy, or Hilton's alleged ability to control any other Defendants and direct the implementation of, or adherence to, the alleged policy.  The Complaint's conclusory allegations about the alleged policy thus do not state a claim against Hilton.  *See Pope v. Fahy*, 2019 WL 6717423, at *3 (S.D.N.Y. Dec. 10, 2019) (dismissing claim because the "plaintiff's allegations of a policy or custom are boilerplate and conclusory"); *Nelson v. Brown*, 2014 WL 4470798, at *4 (E.D.N.Y. Sept. 10, 2014) (same).

The Complaint unambiguously pleads that Hilton did not cause the Plaintiff's alleged injuries.  Because vicarious liability does not exist under § 1981, the Court should dismiss this claim with prejudice.

####       iv.    The Complaint does not plausibly allege that the other named Defendants
                  were Hilton's agents.

Even if the Plaintiff could rely on vicarious liability, the Complaint does not plausibly

allege that either Red Coats or the individual security guard were Hilton's agents.  Under

Virginia law, "[a]gency is defined as a fiduciary relationship arising from the manifestation of

consent by one person to another that the other shall act on his behalf and subject to his control."

*Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 266 (Va. 2019).  "For agency to exist, the

principal must have the right to control the methods or details of doing the work."  *Padilla-Ruiz*

*v. Commc'n Techs., Inc.*, 355 F. Supp. 3d 441, 450 n.4 (E.D. Va. 2019).

The Complaint does not allege any facts from which the Court could infer that Hilton

exercised control over Red Coats or the security guard.  The Complaint repeats the conclusory

assertion that Red Coats and the individual security guard acted as an agent of either Hilton or

the "Property Owner Defendants."  *See* Compl. ¶¶ 7, 9, 45.  But the Complaint never recites any

*facts* from which one could evaluate the parties' relationship or assess whether Hilton had "the

right to control the methods or details of doing the work."  *Padilla-Ruiz*, 355 F. Supp. 3d at 450

n.4.  A conclusory allegation that an agency relationship exists does not plausibly show a

principal-agent relationship because it "fails to provide any *facts* to demonstrate an agency

relationship between defendant and the [other] party."  *Aaronson v. CHW Grp., Inc.*, 2019 WL

8953349, at *3 (E.D. Va. Apr. 15, 2019); *see also Heavener v. Quicken Loans, Inc.*, 2012 WL

13028627, at *4 (N.D.W. Va. Nov. 7, 2012) (dismissing claim because the complaint "entirely

fails to plead facts to support the existence of a principal-agency relationship"); *Feeley v. Total*

*Realty Mgmt.*, 660 F. Supp. 2d 700, 709 (E.D. Va. 2009) (same).[3]

---

[3] To the extent Plaintiff claims that Hilton is also liable under a franchisor liability theory, which
is unclear, that contention also fails because the Complaint does not recite any facts from which

Because the Complaint does not plausibly allege that any of the other named Defendants were Hilton's agents, the Court should dismiss the claim with prejudice.

**B.  The Plaintiff lacks standing to seek relief under 42 U.S.C. § 2000a, and in any event, the Complaint fails to state a claim for relief under that statute (Count II).**

"The elements of a claim under § 2000a essentially mirror those [under] § 1981." *Goode v. Waffle House, Inc.*, 2006 WL 8438442, at *8 (E.D.N.C. Aug. 28, 2006).  To prevail under § 2000a, then, the plaintiff must plead and prove that the defendant intentionally discriminated against the plaintiff because of his race, and that the discrimination related to the denial of service at a public accommodation.  *See Bates*, 2017 WL 2888719, at *2.  The Plaintiff's § 2000a claim fails for five independent reasons: (i) Plaintiff lacks standing to seek relief under this statute; (ii) the Complaint does not allege that Hilton denied Plaintiff access to the hotel or its amenities; (iii) the Complaint does not allege that Hilton intentionally discriminated against Plaintiff; (iv) the Complaint does not allege that Hilton caused Plaintiff's alleged injuries; and (v) the Complaint does not allege that Red Coats or the security guard were Hilton's agents.

**i.  The Plaintiff lacks standing because the Complaint does not plead facts to support injunctive relief.**

Prevailing plaintiffs under § 2000a may obtain only injunctive relief.  *AM Lapomarda*, 2020 WL 3643466, at *5.  "Federal injunctive relief is an extreme remedy, and thus an injunction will not issue unless the Plaintiff shows a clear right to relief.  As part of establishing

---

this Court could evaluate whether Hilton had the right to control—or did actually control—the Property Owner Defendants or any other Defendant.  *See Murphy v. Holiday Inns, Inc*., 216 Va. 490, 494 (1975) (franchisee may be agent of franchisor "[i]f a franchise contract so regulates the activities of the franchisee as to vest the franchisor with control within the definition of agency"); *Saleh v. Egglinger Ins. Agency, LLC*, 2020 WL 1443768, at *3 (D.N.J. Mar. 25, 2020) (dismissing claim for failure to allege sufficient facts because "[i]n the pleading context, caselaw instructs that specific facts pertaining to the franchisor's control are necessary to survive a motion to dismiss").

a clear right to relief, plaintiff must first meet the requirements of standing to bring her suit." *Id*. To plead standing, the plaintiff must allege facts showing "(1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision." *Id*.

When a plaintiff seeks injunctive relief, he "must allege that there is a real and immediate threat that []he will be wronged again." *Id.* at *6. "Standing rules preclude a plaintiff from obtaining injunctive relief based only on events that occurred in the past, even if the past events amounted to a violation of federal law. Indeed, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id*. "[T]he allegation that a plaintiff will suffer a future injury at the hands of a defendant must be non-speculative and must evince more specificity than the future harm will occur some day." *Id*.

Mr. Law lacks standing to purse a § 2000a claim because the Complaint does not allege any imminent harm. The only incident alleged in the Complaint relating to the Plaintiff specifically took place more than two years ago. Compl. ¶ 12. The Complaint does not allege that Hilton threatened or harmed the Plaintiff after his encounter with the security guard in March 2018. The Complaint's exclusive focus "on events that occurred in the past" does not plausibly show "that there is a real and immediate threat that [the plaintiff] will be wronged again." *AM Lapomarda*, 2020 WL 3643466, at *6; *see also Paul v. Cheddar's Scratch Kitchen*, 2020 WL 2598355, at *3 (S.D. Ga. Mar. 30, 2020) (recommending dismissal of § 2000a claim because the claim was "based on a single prior occurrence in which [plaintiffs] were denied a request to be seated in a certain area of the restaurant"); *Acey v. Bob Evans Farms, Inc.*, 2014 WL 989201, at *8 (S.D. W. Va. Mar. 13, 2014) (no standing because "Acey has simply

15

described a single past incident in which he was treated rudely by an employee of Bob Evans");

*Kelser v. Alcazar Shriners*, 2007 WL 484551, at *3 (M.D. Ala. Feb. 9, 2007) (same).

Plaintiff cannot rely on his allegations about ongoing emotional harm to support a request

for injunctive relief.  The Complaint alleges that the Plaintiff continues to suffer "humiliation,

embarrassment, emotional distress, feelings of racial stigmatization, [and] an increased sense of

vulnerability."[4]  Compl. ¶ 22.  But blackletter law holds that "[t]he emotional consequences of a

prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of

future injury by the defendant."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

Plaintiff thus cannot show standing for injunctive relief by pointing to mental anguish.  *See also*

*Mirabella v. William Penn Charter Sch.*, 2017 WL 1062460, at *4 (E.D. Pa. Mar. 20, 2017)

(holding that allegations of "stigma" and "ongoing emotional trauma, loss of self-confidence,

heightened anxiety, and need for psychological counseling" did not support standing for

injunction); *Anderson v. Gov't of Virgin Islands*, 947 F. Supp. 894, 900 n.8 (D.V.I. 1996) ("Since

embarrassment is not a recognized ground for establishing irreparable harm, any stigma on the

defendants is not relevant in evaluating requests for injunctive relief or stays of relief.").

The lack of any allegations about the Plaintiff's intent or plans to return to a Hilton hotel

underscores his lack of standing, given that, accepted as true, the allegations do not plausibly

reveal any imminent or ongoing harm to the Plaintiff that he seeks to enjoin.  *See Paul*, 2020 WL

---

[4] The Complaint also states that the Plaintiff suffered "economic loss."  Compl. ¶ 22.  The
Complaint does not recite any facts to support that conclusion.  In any event, economic loss does
not support a request for injunctive relief because the plaintiff can obtain a money judgment at
the end of the case.  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("It is []
well settled that economic loss does not, in and of itself, constitute irreparable harm."); *Hughes
Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("[A] party
does not normally suffer irreparable harm simply because it has to win a final judgment on the
merits to obtain monetary relief.").

2598355, at *3 (no standing to bring § 2000a claim in part because plaintiffs "have not even

expressed an intention to return to the restaurant"); *Acey*, 2014 WL 989201, at *8 (no standing

because "Acey has not even alleged that he seeks or desires to return to the Restaurant").

The Plaintiff wrongly tries to show standing by relying on allegations about

discriminatory incidents involving other people.  *See* ECF No. 22 at 7–8; Compl. ¶¶ 24–37.  To

qualify for injunctive relief, though, the Complaint must allege that Plaintiff *personally* will

suffer irreparable harm absent an injunction, not that *other* individuals might suffer harm.  *See*

*Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018) ("[I]njuries to third

parties are not a basis to find irreparable harm."); *Phany Poeng v. United States*, 167 F. Supp. 2d

1136, 1142 (S.D. Cal. 2001) ("[T]he traditional irreparable injury standard examines the

possibility of injury to *Plaintiff* and not third parties."); *see also Morice v. Hosp. Serv. Dist. #3*,

2019 WL 1517954, at *7 (E.D. La. Apr. 8, 2019) (citing cases).

Finally, this Court's recent decision in *AM Lapomarda* finding standing for a § 2000a

claim is materially distinguishable from the facts here.  In *AM Lapomarda*, this Court held that

the plaintiff had standing to bring a § 2000a claim because the plaintiff lived near the store that

refused her service and specifically alleged that she "would return to the store in the near future

after Defendants' conduct is adequately proscribed, deterred, and modified."  2020 WL 3643466,

at *7.  By contrast, the Complaint here does not allege that Plaintiff intends to return to any

Hilton hotel, let alone the one at issue.  Because Plaintiff lacks standing to seek relief under §

2000a, the Court should dismiss the § 2000a claim for lack of subject matter jurisdiction.

> ### ii.    The Complaint does not allege that Hilton denied the Plaintiff access to a public accommodation.

Like § 1981, § 2000a is not a general anti-discrimination statute.  Instead, under the

statute, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services,

17

facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race." 42 U.S.C. § 2000a(a). "The purpose of [§ 2000a] is to eliminate the daily affront and humiliation involved in discriminatory *denials of access* to facilities ostensibly open to the general public." *EEOC v. Chicago Club*, 86 F.3d 1423, 1434 (7th Cir. 1996) (emphasis added). Thus, "[t]o make a viable claim, [] the plaintiff must allege[] that he himself was denied access or services of the public accommodation, for that is the essence of a violation of section 2000a." *Bartley v. Virgin Grand Villas*, 197 F. Supp. 2d 291, 294 (D.V.I. 2002).

The Complaint does not allege that Hilton denied the Plaintiff access to any public accommodation. The Complaint does not allege that Hilton denied the Plaintiff access to his room or terminated his stay at the hotel. Nor does the Complaint allege that the hotel denied Plaintiff access to or prevented him from using its common areas or amenities. According to the Complaint, the only alleged harm was the security guard asking the Plaintiff whether he belonged at the hotel. Compl. ¶¶ 15–16.

Courts in this Circuit have dismissed similar § 2000a claims. For example, in *Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512 (W.D.N.C. 1998), the plaintiffs brought a § 2000a claim against a restaurant based on the staff's discourteous conduct. *Id.* at 517–18. The court dismissed that claim because the plaintiffs "were not denied access to the restaurant, were not denied service, were never asked to leave, and in fact successfully ordered and received their dinner." *Id.* at 521–22. Other cases make the same point. *E.g.*, *Amir El v. T Mobile*, 2009 WL 936296, at *2 (D. Del. Apr. 6, 2009) (no § 2000a claim because "there are no allegations in the Complaint that Amir was excluded from a public accommodation" despite insensitive request to provide identification); *Jeffrey v. Home Depot USA, Inc.*, 90 F. Supp. 2d 1066, 1070 (S.D. Cal.

2000) (no claim despite allegedly discriminatory comments because "Jeffery was not denied service or access to merchandise at Home Depot").

The Plaintiff here wrongly likens the security guard's questions to a denial of service. *See* ECF No. 22 at 6.  That contention ignores the fact that Hilton never evicted Plaintiff from the hotel, denied him access to any amenities, or otherwise refused to serve him.  Plaintiff does not cite *a single case* that allowed a § 2000a claim with comparable facts to proceed.  And for these reasons, as discussed above, this Court's ruling in *AM Lapomarda* is distinguishable.  In *AM Lapomarda*, the Court held that the complaint plausibly alleged a § 2000a claim because a store clerk refused to serve the plaintiff.  2020 WL 3643466, at *8.  Here, by contrast, no one denied the Plaintiff access to an accommodation or refused to serve him.

Because the Complaint does not allege that Hilton denied the Plaintiff access to, or service at, a public accommodation, the Court should dismiss this claim with prejudice.

### iii.    The Complaint does not allege that Hilton intentionally discriminated against the Plaintiff because of his race.

Just as with § 1981, a § 2000a claim requires the complaint to plausibly allege that the defendant intentionally discriminated against the plaintiff because of his race.  *See Goode*, 2006 WL 8438442, at *8 (noting identity of elements between § 1981 and § 2000a).  As explained above, the Complaint does not plausibly allege that anyone intentionally discriminated against the Plaintiff because of his race.  *See supra* Argument § I.A.ii.  For that reason, the Court should dismiss the § 2000a claim with prejudice.

### iv.    The Complaint does not allege that Hilton caused the Plaintiff's alleged harm.

As explained above, Hilton did not directly cause the Plaintiff's alleged injuries, and the Complaint's conclusory references to Hilton's policy of profiling guests do not state a claim

against Hilton because there is no underlying violation of § 2000a.  *See supra* Argument

§§ I.A.iii, I.B.ii.  And as with § 1981 claims, courts have held that vicarious liability does not

apply under § 2000a.  *See Jones v. City of Bos.*, 738 F. Supp. 604, 606 (D. Mass. 1990) ("Since

the Supreme Court has decided that *respondeat superior* does not apply to section 1983 claims, I

conclude that the same reasoning applies to section 2000a claims.").  The Court should therefore

dismiss the § 2000a claim with prejudice.

> **v.    The Complaint does not allege that the other named Defendants were Hilton's agents.**

As explained above, even if vicarious liability were available for § 2000a claims, and it is

not, the Complaint does not plausibly allege any facts from which the Court could infer that any

of the named Defendants were Hilton's agents.  *See supra* Argument § I.A.iv.  The Court should

therefore dismiss the § 2000a claim for that reason as well.

### C.  The Complaint does not state a claim for relief under Va. Code § 8.01-42.1 (Count III).

Virginia law creates a cause of action for any individual "who is subjected to acts of []

intimidation or harassment . . . where such acts are motivated by racial, religious, gender,

disability, gender identity, sexual orientation, or ethnic animosity."  Va. Code § 8.01-42.1(A).

The Plaintiff's claim under this provision fails for two independent reasons: (i) the Complaint

does not plausibly allege that Plaintiff was intimidated or harassed because of his race, and (ii)

the Complaint does not plead that Hilton or its agents caused the alleged harm.

> **i.    The Complaint does not allege that Hilton intimidated or harassed the Plaintiff because of his race.**

Section 8.01-42.1 does not define "intimidation" or "harassment," so this Court should

give those terms their ordinary meaning.  *Jones v. Commonwealth*, 276 Va. 121, 125 (2008)

(courts give undefined terms their "ordinary meaning, given the context in which [they are]

used").  Black's Law Dictionary defines discriminatory harassment as conduct that "shows

hostility to, or exhibits aversion toward a person or group (esp. of a protected class), thereby

creating a hostile environment that unreasonably interferes with learning, living, or working."

*Harassment*, BLACK'S LAW DICTIONARY (11th ed. 2019).  That dictionary also defines

intimidation as "[u]nlawful coercion; extortion."  *Intimidation*, BLACK'S LAW DICTIONARY (11th

ed. 2019).

The ordinary meaning of these terms requires a sustained confrontation that amounts to a

hostile environment or unlawful coercion.  That understanding coincides with how Virginia law

treats intimidation in other contexts.  For example, the term "intimidation" in Virginia's rape

statute "means putting a victim in fear of bodily harm by exercising such domination and control

of her as to overcome her mind and overbear her will."  *Sutton v. Commonwealth*, 228 Va. 654,

663 (1985).  That definition reinforces the principle that, to qualify as intimidation or

harassment, the alleged misconduct must be so sustained and aggressive as to put the victim in

fear of harm.  Though *Sutton* dealt with a criminal statute, courts have invoked its definition of

"intimidation" in other contexts.  *See Lunceford v. Commonwealth*, 2016 WL 6208632, at *2 n.1

(Va. Ct. App. Oct. 25, 2016) ("Although *Sutton* dealt specifically with the meaning of

'intimidation' in Virginia's rape statute, it is a common canon of statutory construction that when

the legislature uses the same term in separate statutes, that term has the same meaning in each

unless the General Assembly indicates to the contrary.").

Courts have also recognized that they should construe "intimidation" and "harassment" in

§ 8.01-42.1 narrowly to avoid abridging the First Amendment.  "Intimidation in the

constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a

threat to a person or group of persons with the intent of placing the victim in fear of bodily harm

or death." *Sines v. Kessler*, 324 F. Supp. 3d 765, 801 (W.D. Va. 2018).  Thus, for speech to qualify as "intimidation" or "harassment" under § 8.01-42.1, it must meet the constitutional definition of "'true threats,' which include statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual."  *Salim v. Dahlberg*, 170 F. Supp. 3d 897, 913 (E.D. Va. 2016).

The Complaint here does not plausibly allege intimidation or harassment.  The only alleged misconduct was a brief conversation in which the security guard asked the Plaintiff for his room key to see if he "belonged" at the hotel.  Compl. ¶¶ 15–16.  The Complaint does not allege that the security guard threatened the Plaintiff or that the Plaintiff felt threatened.  Nor does the Complaint allege that the security's guard questions led to a sustained confrontation or created a noticeable disruption.  The Complaint thus does not allege intimidation or harassment "in the constitutionally proscribable sense of the word[s]."  *Sines*, 324 F. Supp. 3d at 801; *see also Sewraz*, 2011 WL 201487, at *13 (dismissing § 8.01-42.1 claim for failure to plausibly allege intimidation or harassment).

The facts here also differ from those in *AM Lapomarda*.  In that case, in allowing the § 8.01-42.1 claim to proceed past a 12(b)(6) motion, the Court observed that the 7-11 employee repeatedly refused plaintiff service, implied that she may try to rob the store, asserted that plaintiff was "a security risk," questioned whether the sunglasses she was wearing as a Muslim woman to cover her face in public were a "religious garment," laughed in response to her explanation of the requirements of her religious beliefs, called the police to have her removed, and expressed "paranoi[a]" about plaintiff "because of all the stuff that's going on."  *See AM Lapomarda*, 2020 WL 3643466, at *13.  The sustained, threatening encounter in *AM Lapomarda* was akin to the facts in other cases that allowed § 8.01-42.1 claims to proceed.  *See id*.

(explaining that courts have allowed these claims to proceed "when defendants used racial slurs and attacked plaintiffs").  In contrast, the Complaint here alleges nothing like the aggressive and harassing confrontations in these other cases, and the Plaintiff once again cites not one case that allowed a § 8.01-42.1 claim to proceed based only on a short conversation bereft of racial epithets or threats.  *See* ECF No. 22 at 8–9.

> ### ii.     The Complaint does not allege that Hilton or its agents caused the Plaintiff's alleged harm.

As explained above, Hilton did not directly cause the Plaintiff's alleged injuries, and the Complaint does not plausibly allege that any other named Defendant was Hilton's agent.  *See supra* Argument §§ I.A.iii, I.A.iv.  Likewise, the Complaint's conclusory references to Hilton's policy of profiling guests do not state a claim against Hilton because there is no underlying violation of § 8.01-42.1.  *See supra* Argument § I.C.i.  For those reasons, the Court should dismiss with prejudice the Plaintiff's state-law claim.

## II.     Alternatively, the Court should dismiss the action against Hilton under Rule 12(b)(5) because the Plaintiff did not timely serve the Complaint on Hilton.

Rule 4(m) requires the plaintiff to serve the complaint on the defendant(s) no more than 90 days after filing it.  FED. R. CIV. P. 4(m).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id*.  Thus, absent good cause, the Rule requires this Court to dismiss the complaint if the plaintiff does not serve a defendant within 90 days.

It is undisputed that the Plaintiff did not timely serve Hilton.  Plaintiff filed the Complaint on February 28, 2020, ECF No. 1, which gave him until May 28, 2020 to serve Hilton.  The

Plaintiff, though, did not serve Hilton until September 1, 2020, more than six months after he filed the Complaint and well past Rule 4(m)'s 90-day limit.  *See* ECF No. 28.

The Plaintiff does not have good cause for the delayed service.  "To show good cause requires demonstrating reasonable and diligent efforts to effect service."  *Reliable Tax*, 212 F. Supp. 2d at 595.  The Plaintiff has not filed any documents with the Court that purport to show he diligently tried to serve Hilton within the 90-day window.  Nor did Hilton try to evade service or obstruct the Plaintiff's process server.  After all, Hilton's registered agent, the Corporation Service Company, is a major registered agent service—with publicly available contact information—located within this very District.  *See* ECF No. 28 at 3 (summons for Hilton noting registered agent's address in Richmond, Virginia).  And the Plaintiff here especially lacks good cause for the delay because he secured service waivers from the other named Defendants and has been *actively litigating* this case for months.  *See* ECF Nos. 8, 9.  Mere "inadvertence or basic neglect" do not qualify as good cause.  *Lilly v. Winter*, 2006 WL 543977, at *2 (E.D. Va. Mar. 3, 2006); *cf. Parker v. Magna Innertech-Spartanburg*, 2009 WL 5178014, at *2 (D.S.C. Dec. 29, 2009) (finding good cause because the plaintiff relied on the clerk's office's mistaken representation that the U.S. Marshal would serve the complaint).

Because the Plaintiff did not timely serve the Complaint on Hilton and lacks good cause for the delay, the Court should dismiss the action without prejudice if it does not dismiss the action with prejudice under Rules 12(b)(1) and 12(b)(6).

## CONCLUSION

For these reasons, the Court should grant Hilton's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) and dismiss the claims with prejudice.  Alternatively, the Court should

grant Hilton's Motion to Dismiss under Rule 12(b)(5) and dismiss the Plaintiff's claims without prejudice because of untimely service.

Dated:  October 20, 2020                                 Respectfully submitted,

                                                         **HILTON DOMESTIC OPERATING**
                                                         **COMPANY INC.**
                                                         *By Counsel*

                                                         /s/ Ryan D. Frei
                                                         Ryan D. Frei (VA Bar # 70996)
                                                         Lyle D. Kossis (VA Bar # 85603)
                                                         McGuireWoods LLP
                                                         Gateway Plaza
                                                         800 East Canal Street
                                                         Richmond, VA 23219
                                                         Phone: (804) 775-1134
                                                         Fax: (804) 698-2168
                                                         rfrei@mcguirewoods.com
                                                         lkossis@mcguirewoods.com

                                                         John D. Wilburn (VA Bar # 41141)
                                                         Brooks H. Spears (VA Bar # 86391)
                                                         McGuireWoods LLP
                                                         1750 Tysons Boulevard
                                                         Suite 1800
                                                         Tysons, VA 22012
                                                         Phone: (703) 712-5372
                                                         Fax: (703) 712-5230
                                                         jwilburn@mcguirewoods.com
                                                         bspears@mcguirewoods.com

                                                         Norman M. Leon (*pro hac vice* forthcoming)
                                                         DLA Piper
                                                         444 West Lake Street
                                                         Suite 900
                                                         Chicago, Illinois 60606
                                                         Phone: (312) 368-2192
                                                         Fax: (312) 630-6322
                                                         norman.leon@dlapiper.com

                                                         *Attorneys for Defendant*
                                                         *Hilton Domestic Operating Company Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2020, I caused the foregoing to be filed with the

Clerk of the U.S. District Court for the Eastern District of Virginia using the Court's CM/ECF

system, which will electronically serve copies of the same on counsel for all parties.

*/s/ Ryan D. Frei*
Ryan D. Frei (VA Bar # 70996)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-1134
Fax: (804) 698-2168
rfrei@mcguirewoods.com

*Attorneys for Defendant*
*Hilton Domestic Operating Company Inc.*