IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALBERT LAW,
     Plaintiff,

     v.                               Case No. 3:20cv145 (DJN)

HILTON DOMESTIC OPERATING,
COMPANY, INC. *et al.*,
     Defendants.

**MEMORANDUM OPINION**

Plaintiff Albert Law ("Plaintiff") brings this action against Defendants Hilton Domestic Operating Company, Inc. ("Hilton"), HRIP Miller & Rhoads Acquisition, LLC ("HRIP"), Miller & Rhoads Residential Condominium Association, Inc. ("Miller & Rhoads Condo"), Miller & Rhoads Residential Acquisition, LLC ("Miller & Rhoads Residential"), Red Coats, Inc. ("Red Coats"), and John Doe, alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 2000a, and Va. Code § 8.01-42.1. This matter now comes before the Court on the Motions to Dismiss (ECF Nos. 10, 19, 33) filed by Red Coats, HRIP and Hilton (collectively "Defendants"). For the following reasons, the Court hereby DENIES Red Coats' Motion to Dismiss (ECF No. 10), HRIP's Motion to Dismiss (ECF No. 19) and Hilton's Motion to Dismiss (ECF No. 33).

## I.    BACKGROUND

### A. Factual Background

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF No. 1.) Against that backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant motions.

Plaintiff is a 58-year-old African-American software executive who resides in Suwanee, Georgia. (Compl. ¶¶ 4-5, 11-12.) Defendant Hilton is a corporation engaged in the operation, management and franchising of hotels, including the Hilton Downtown Richmond. (Compl. ¶ 5.) Defendant Red Coats is a stock corporation that, at all times relevant to this matter, provided security services to the Hilton Downtown Richmond. (Compl. ¶ 7.) Defendant Red Coats hired Defendant John Doe to work as a security officer for this hotel. (Compl. ¶ 7.) Defendant HRIP is a limited liability company that, with Defendants Miller & Rhoads Condo and Miller & Rhoads Residential, owns and operates the Hilton Downtown Richmond, a hotel of public accommodation. (Compl. ¶ 6.)

On March 4, 2018, Plaintiff traveled to Richmond for business and checked in to the Hilton Downtown Richmond. (Compl. ¶¶ 12-13.) After checking in, Plaintiff went to the hotel lobby to wait for a colleague. (Compl. ¶ 14.) At that time, the only other guests in the lobby were white. (Compl. ¶ 15.) Defendant John Doe, acting as the hotel security officer, approached Plaintiff as he waited in the lobby and asked him multiple times whether he "belonged there." (Compl. ¶ 15.) He demanded that Plaintiff produce identification and his room key to prove that he had a reservation at the hotel. (Compl. ¶ 16.) Defendant Joe Doe asked no other guest in the lobby for their identification or proof of their stay. (Compl. ¶ 17.) When Plaintiff complained to the front desk and to Hilton's corporate office, they told him that he "fit the homeless profile." (Compl. ¶ 18.)

### B. Plaintiff's Complaint

On February 28, 2020, Plaintiff filed his Complaint against Defendants, raising three counts for relief based on the above allegations. In Count One, Plaintiff alleges that Defendants unlawfully discriminated against him in violation of 42 U.S.C. § 1981. (Compl. ¶¶ 38-47.)

2

Specifically, by confronting the only African American present in the hotel lobby and repeatedly stating that he did not "belong" there, Defendants denied Plaintiff accommodations on the basis of his race. (Compl. ¶ 43.) Relatedly, Count Two alleges unlawful discrimination in violation of 42 U.S.C. § 2000a. (Compl. ¶¶ 48-58.) Count Three alleges that Defendants committed a hate crime under Va. Code § 8.01-42.1, by subjecting Plaintiff to acts of intimidation and harassment motivated by Defendants' racial animosity. (Compl. ¶¶ 59-66.)

Based on these claims, Plaintiff seeks a declaratory judgment declaring that the actions of Defendants violated § 1981 and § 2000a, and injunctive relief, forbidding Defendants from requiring African-American guests, based solely on their race, to prove that they have the right to enjoy the use of hotel facilities while white guests do not. (Compl. ¶ 68.) Plaintiff also seeks the award of compensatory damages in an amount to be determined by a jury to compensate him for his economic loss, humiliation and emotional distress, as well as punitive damages and reasonable attorney's fees. (Compl. ¶¶ 69-71.)

### C. Red Coats' Motion to Dismiss

In response to Plaintiff's Complaint, on June 16, 2020, Red Coats filed a Motion to Dismiss (ECF No. 10), moving to dismiss Plaintiff's claims against it for failure to state a claim under Rule 12(b)(6). In support of its Motion, Red Coats argues that Plaintiff's claims under § 1981 and § 2000a fail as a matter of law, because Plaintiff does not allege that Defendants denied him any accommodation or benefit of his contract. (Mem. in Supp. of Mot. to Dismiss of Red Coats, Inc. ("Red Coats Mem.") (ECF No. 11) at 2, 4-6.) Specifically, "Plaintiff does not allege that he was involuntarily removed from the lobby, evicted from the Richmond Hilton, or that his stay at the Richmond Hilton was otherwise impacted, interfered with, or interrupted."

3

(Red Coats Mem. at 2.)  Red Coats also argues that Count III fails, because Plaintiff does not allege facts sufficient to infer the commission of a hate crime.  (Red Coats Mem. at 2, 6-7.)

Plaintiff filed his Response in Opposition to Red Coats' Motion to Dismiss on July 1, 2020, (Pl.'s Resp. in Opp. to Def. Red Coats' Mot. to Dismiss ("Pl. Red Coats Resp.") (ECF No. 15)), and Red Coats filed its Reply on July 7, 2020, (Reply Mem. in Supp. of Mot. to Dismiss of Red Coats) ("Red Coats Reply") (ECF No. 16)), rendering Red Coats' Motion now ripe for review.

### D.  HRIP's Motion to Dismiss

Separately from Red Coats, on July 20, 2020, HRIP filed a Motion to Dismiss (ECF No. 19).  In support of its Motion, HRIP mirrors Red Coats' argument that Plaintiff's claims under § 1981 and § 2000a fail as a matter of law, because Plaintiff has not alleged that Defendants denied him any accommodations.  (Mem. in Supp. of Mot. to Dismiss of HRIP Miller & Rhoads Acquisition, LLC ("HRIP Mem.") (ECF 20) at 5-8.)  Additionally, Plaintiff fails to allege that race constituted the but-for cause of Defendants' actions.  (HRIP Mem. at 6-8.)  Instead, HRIP argues that questions alone cannot amount to a denial of accommodations, and that even if they did, "innumerable reasons [other than race] could have caused John Doe to approach Mr. Law." (HRIP Mem. at 6, 8.)  HRIP also argues that Plaintiff's claim to injunctive relief under § 2000a must fail, because Plaintiff has made no allegation that a "real and immediate threat" existed that he would be wronged again.  (HRIP Mem. at 8.)  Finally, HRIP argues that Count III fails, because the facts alleged do not "fall within the ambit of Virginia's hate crime statute, or even within the realm of constitutionally proscribable speech."  (HRIP Mem. at 8-9.)

Plaintiff filed his Response in Opposition to HRIP Miller & Rhoads Acquisition, LLC's Motion to Dismiss on August 3, 2020, (Pl.'s Resp. in Opp. to Def. HRIP's Mot. to Dismiss ("Pl.

HRIP Resp.") (ECF No. 22)), and HRIP filed its Reply on August 20, 2020, (Reply Mem. in Supp. of Mot. to Dismiss of HRIP) ("HRIP" Reply")) (ECF No. 25)), rendering HRIP's Motion now ripe for review.

### E. Hilton's Motion to Dismiss

Separately from both Red Coats and HRIP, Hilton filed a Motion to Dismiss on October 20, 2020 (ECF No. 33), moving to dismiss Plaintiff's claims as to it for failure to state a claim under Rule 12(b)(6) as to all three counts, and for lack of standing under Rule 12(b)(1) as to Count II.  In support of its Motion, Hilton argues that Plaintiff's claims under § 1981 and § 2000a fail as a matter of law, because Plaintiff has not identified a contractual relationship that Hilton prevented Plaintiff from making or enforcing, or a contractual relationship that Hilton impaired.  (Mem. in Supp. of Mot. to Dismiss of Hilton Domestic Operating Company, Inc. ("Hilton Mem.") (ECF 34) at 6.)  Specifically, Hilton never evicted Plaintiff from the hotel, prohibited him from staying at the hotel or prevented him from using or accessing the hotel lobby.  (Hilton Mem. at 6.)  Hilton maintains that "[a]llegations about the Plaintiff's subjective enjoyment of the hotel lobby cannot support a § 1981 claim absent a tangible impairment of a contract."  (Hilton Mem. at 6.)  Hilton also argues that the Complaint fails to allege that Hilton intentionally discriminated against Plaintiff because of his race.  (Hilton Mem. at 9.)

Hilton further contends that Plaintiff lacks standing to bring suit under § 2000a, because he fails to plead facts that support injunctive relief.  (Hilton Mem. at 14.)  As to Count III, Hilton argues that the Complaint does not plausibly allege that Hilton intimidated or harassed Plaintiff because of his race.  (Hilton Mem. at 20-23.)

For all counts, Hilton contends that Plaintiff has failed to tie the alleged misconduct to Hilton either directly or vicariously.  (Hilton Mem. at 2.)  Finally, Hilton argues that the Court

should dismiss the entire action, because Plaintiff did not timely serve Hilton. (Hilton Mem. at 2.)

Plaintiff filed his Response in Opposition on November 3, 2020 (Pl.'s Resp. in Opp. to Def. Hilton's Mot. to Dismiss ("Pl. Hilton Resp.") (ECF No. 39)), and Hilton filed its Reply on November 9, 2020, (Reply Mem. in Supp. of Mot. to Dismiss of Hilton) ("Hilton" Reply") (ECF No. 43)), rendering Hilton's Motion now ripe for review.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.

1991). A defendant challenging a plaintiff's standing to seek the relief requested may properly seek dismissal under Rule 12(b)(1). *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

### A. Count One: Violation of 42 U.S.C. § 1981

In Count I of the Complaint, Plaintiff asserts a violation of 42 U.S.C. § 1981, which prohibits race-based discrimination in the making and enforcing of contractual relationships. (Compl. ¶¶ 38-47.) As mentioned, Defendants argue that the Court must dismiss Count I, because Plaintiff failed to allege sufficient facts in support of his claim that Defendants denied

7

him the right to contract with the hotel or otherwise impair the "benefits, privileges, terms and conditions" of a contractual relationship. (Red Coats Mem. at 4; HRIP Mem. at 2; Hilton Mem. at 5-6.) Specifically, Plaintiff does not allege that Defendants denied Plaintiff accommodations in violation of their contractual relationship, because Defendants never removed Plaintiff from the hotel or prevented him from completing his stay there. (Red Coats Mem at 5; HRIP Mem. at 6; Hilton Mem. at 6.) Defendants HRIP and Hilton also argue that Plaintiff fails to allege that racial animus or discriminatory intent constituted the but-for cause of Defendants' actions. (HRIP Mem. at 5-7; Hilton Mem. at 17-18.)

Plaintiff responds that he has pled facts sufficient to support a viable claim under § 1981 and to show that discriminatory intent represented the cause of Defendants' actions. (Pl. Red Coats Resp. at 2-5; Pl. HRIP Resp. at 3-4; Pl. Hilton Resp. at 4.) Specifically, Plaintiff points to the fact that Defendants prevented him from experiencing the "carefree enjoyment of hotel amenities" and completing his stay without significant disruption, degradation and racial stigmatization. (Pl. Red Coats Resp. at 3; Pl. HRIP Resp. at 5.) Plaintiff argues that interference with his contractual rights occurred when Defendants profiled him and denied him the right to free use and enjoyment of the hotel lobby. (Pl. Hilton Resp. at 4-5.)

### i.   Plaintiff Has Alleged Facts Sufficient to Support a Claim that Defendants Violated his Right to Contract under § 1981.

Section 1981 states in relevant part:

(a) All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (a)-(b). This section applies to "purely private acts of racial discrimination" and prohibits such discrimination in the making and enforcement of all contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)). To state a prima facie case for racial discrimination in hotel accommodations under this statute, a plaintiff must show that:

> (1) [he] is a member of a protected class, (2) [he] sought to enter into or had a contract with a hotel for accommodations, (3) [he] met the hotel's standard requirements for occupancy, and (4) [he] was denied accommodations that were available to guests outside of the protected class.

*Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). To survive a motion to dismiss, however, a plaintiff need not plead facts that would establish a prima facie case of racial discrimination. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Rather, the plaintiff's allegations must "'raise [the plaintiff's] right to relief [under the *prima facie* framework] above the speculative level.'" *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (alterations added) (quoting *Twombly*, 550 U.S. at 555).

The parties do not dispute that Plaintiff's claims meet the first three prongs of this test. However, because Defendants never prevented Plaintiff from entering into a contract with the hotel, the parties disagree on whether Defendants actually "denied accommodations" to Plaintiff. (Red Coats Mem. at 5; HRIP Mem. at 5-6; Hilton Mem. at 6.) Defendants contend that repeatedly questioning Plaintiff and asking for his identification in the hotel's lobby did not constitute a violation of a contractual right contemplated by this statute, or a denial of accommodations covered under this framework. (Red Coats Mem. at 5; HRIP Mem. at 5-6; Hilton Mem. at 6.) As Defendant Red Coats states, "Plaintiff's allegations related to Red Coats describe an unpleasant and insensitive conversation between himself and Doe. This is not tantamount to denial of accommodations." (Red Coats Mem. at 5.)

The majority of cases decided under the *Murrell* framework involve plaintiffs evicted from or denied admission to a hotel because of their race. *See, e.g., Murrell*, 262 F.3d at 258 (finding that a group of African-Americans who were evicted from their hotel room had a viable denial of accommodations claim under § 1981); *Powell v. Super 8 Motels, Inc.*, 181 F. Supp. 2d 561, 564 (E.D. N.C. 2000) (finding that a plaintiff who was denied a motel room because of his race had a viable claim under § 1981). Few cases address what other actions, if any, constitute "denial of accommodations" under this framework. The Court will address separately whether Defendants' actions related to "accommodations" under § 1981 and whether their actions constituted a "denial" of those accommodations.

With respect to accommodations, the plain language of § 1981 clearly contemplates a more expansive view of the right to contract, as it includes protections for the enjoyment of "all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, the contractual rights protected in the hotel context extend beyond the mere right to reserve a room or a bed for the night. A contract with a hotel or a similar place of public accommodation necessarily includes both the right to use the guest's individual hotel room, as well as the right to use and enjoy the amenities, services and common areas that the hotel makes available to its guests, on the same terms and conditions as those other guests. *See Sanders v. Commonwealth*, 772 S.E.2d 15, 22 (Va. Ct. App. 2015) ("[A] motel's registered guest acquires a license to use the motel's common areas, including the walkway leading to the guest's room.") These amenities constitute the "benefits, privileges, terms, and conditions" of the contractual relationship between a hotel and its guest. Thus, a "denial of accommodations" includes more than the denial of a reservation or a room. It includes depriving a guest of the same use, access

and enjoyment of the common areas, including the lobby, that the hotel provides to its other guests.

Courts have likewise adopted a more expansive reading of the §1981 protections in the restaurant context, finding that § 1981 protects against the discriminatory denial of both the meal itself, as well as the other fundamental aspects of the experience that customers reasonably assume to be a part of the contract formed when purchasing a meal at that restaurant. *See Charity v. Denny's, Inc.*, 1999 WL 544687 (E.D. La. July 26, 1999) ("[T]he contract formed between a restaurant and a customer does include more than just the food served" in that it "includes being served in an atmosphere which a reasonable person would expect in the chosen place."); *McCaleb v. Pizza Hut of America, Inc.*, 28 F. Supp. 2d 1043, 1048 (N.D. Il. 1998) (finding a violation of § 1981 when plaintiffs were denied "the accouterments that are ordinarily provided with a restaurant meal," including access to silverware and consistent lighting); *Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 520 (W.D.N.C. 1998) (finding plaintiffs' allegations "go beyond poor service" and meet the § 1981 standard when restaurant defendant required them to prepay, thereby "alter[ing] a fundamental characteristic of the service provide by the public accommodation"). So too, the full benefit of a hotel guest's bargain with a hotel includes those fundamental aspects of the experience that a guest reasonably assumes to be a part of that contract, including the right to move about the hotel's common areas and enjoy the amenities provided by the hotel to its guests under the same terms and conditions as any other guest. Thus, Defendants' interference implicated Plaintiff's enjoyment of the accommodations.

With respect to a denial, Defendants essentially argue that only an eviction or removal from the hotel can amount to a "denial" for purposes of § 1981 liability. The statute includes broad language with respect to the conduct it prohibits, including the "enjoyment of all benefits"

11

of the contractual relationship.  42 U.S.C. § 1981(b).  Although a denial requires more than an

unpleasant experience, § 1981 does not ascribe liability only to an actual eviction or removal.

The line falls somewhere in between.  The Court concludes that repeatedly asking someone

whether they belong in a hotel's common area and demanding identification from them as they

attempt to occupy that space could constitute a level of harassment that deprives a guest of the

enjoyment of his contractual use of that space.  Based on Plaintiff's allegations and his claims

that the security guard "accosted him," the Court finds it plausible that Defendants' alleged acts

could rise to the level of interference necessary for a trier of fact to conclude that Defendants

deprived Plaintiff of his contractual use of the hotel's common areas.  Facts uncovered in

discovery may ultimately undermine this theory, but at this stage of litigation, Plaintiff has met

his burden as to this issue.

      The cases that Defendants cite fail to persuade the Court otherwise.  In *Sherman*, the

Court rejected the plaintiff's § 1981 claim, because Sherman had not demonstrated that the hotel

had denied him accommodations available to guests outside his protected class based on his

claims that hotel management insisted on escorting Sherman to his room to retrieve his

identification before issuing him a replacement key.  *Sherman v. Marriott Hotel Services, Inc.*,

317 F. Supp. 2d 609, 615 (D. Md. 2004).  However, the court found that the hotel already had an

established policy of requiring guests to provide identification in similar circumstances, so

Sherman had in fact "enjoyed the benefits and privileges, on the very same terms and conditions,

of the contractual relationship offered by the defendant to any prospective guest."  *Id.*  The court

never directly answered whether, if instead, the hotel had *excepted* Sherman from the policy,

thereby denying him the benefits of his contractual relationship "on the very same terms and

conditions" as any other prospective guest, he could have established a viable claim.

Hilton's reliance on *Zuyus v. Hilton Riverside* proves similarly inapposite. There, the court dismissed the plaintiff's § 1981 claim that a hotel discriminated against him when its hotel security guard accused him of shoplifting from the hotel's coffee shop, finding that the plaintiff had failed to allege a tangible attempt to contract with the hotel. *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631, 635 (E.D. La. 2006). However, the plaintiff had entered the hotel as a patron of the hotel lobby's coffee shop, and not as a hotel guest or someone attempting to become a guest. *Id.* The Court can draw few comparisons between the context contemplated there and the one presented here, as the *Zuyus* plaintiff did not seek to enter nor had entered a contractual relationship with the hotel as a hotel guest.

Hilton likewise relies on cases from the retail context in which courts denied or dismissed § 1981 claims because plaintiffs merely alleged that defendant retailers denied them the "experience" of contracting in their stores. (Hilton Mem. at 6-8.) These cases consistently state that the retailer must have actually prevented the customer from making a purchase for the customer to establish a claim under § 1981. *Lopez v. Target Corp.*, 676 F.3d 1230, 1231 (11th Cir. 2012); *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 700 (D. Md. 2003). However, the right to contract in the retail context differs significantly from the right to contract in the hotel context. A patron of a store generally enters the store to purchase a product or specific goods, whereas the analogous "product" that the hotel guest purchases encompasses access to their room as well as the use of the hotel amenities throughout their stay. Simply put, "accommodations" embody more in the hotel context than the retail context.

Defendants also challenge whether the allegations establish that Defendants denied Plaintiff access to the hotel's lobby on the basis of Plaintiff's race. However, Plaintiff's allegation that he represented the only black hotel guest in a lobby of otherwise white guests, and

that Defendants treated him differently from the other guests could create the inference that this
disparate treatment was motivated by discriminatory intent in violation of § 1981. *See Murrell*,
262 F.3d at 258 (inferring discriminatory intent when hotel defendant treated an interracial
family of guests differently from white guests). While, as Defendant HRIP states, other,
reasonable explanations for this conduct may exist, the Court must view Plaintiff's allegations in
a light most favorable to him at this stage of litigation. Accordingly, the Court finds that
Plaintiff has sufficiently pled a denial of accommodations based on his race.

### ii.   Defendant Hilton's Claim that the Complaint Does Not Allege that Hilton Caused Plaintiff's Alleged Harm Fails.

In support of Hilton's Motion to Dismiss, Hilton argues that Plaintiff fails to allege that it
either directly, or indirectly through an agent, caused Plaintiff's alleged harm, and that this
failure necessitates dismissal of all three counts in the Complaint as to Hilton. (Hilton Mem. at
11-12.) Specifically, Hilton contends that Plaintiff cannot rely on a theory of vicarious liability
to hold Hilton liable under §1981, because claims of intentional discrimination require a showing
of direct involvement by the actor. (Hilton Mem. at 11.) Even if Plaintiff could rely on a theory
of vicarious liability, Hilton contends that Plaintiff has failed to establish that John Doe or Red
Coats acted as an agent of Hilton when it committed the acts alleged in the Complaint. (Hilton
Mem. at 13.) Specifically, the Complaint, "never recites any facts from which one could
evaluate the parties' relationship or assess whether Hilton had" the right to control the methods
and manner of the other Defendants' work. (Hilton Mem. at 21.)

The Court disagrees. A corporate defendant such as Hilton "may be liable as a primary
torfeasor (independent of respondeat superior liability) if it authorized, directed, ratified, or
performed the tortious conduct." *Parker v. Carilion Clinic*, 819 S.E.2d 809, 823 (Va. 2018)
(citing Restatement (Third) of Agency § 7.03(1)). In the Complaint, Plaintiff alleges that Hilton

14

maintains a systemic "policy and custom" of profiling African-American guests present in the lobbies of its hotel franchises. (Compl. ¶ 25.) Indeed, "security agents of Defendant Hilton's hotels have accosted African-American guests on several occasions and either forced the guests to leave, or demanded that the guests show proof of their status as a guest of the hotel." (Compl. ¶ 25.) Plaintiff further alleges that Defendant John Doe, a security guard in one of Hilton's hotels, "profiled Plaintiff in accordance with that unconstitutional policy or custom." (Compl ¶ 45.) Plaintiff's detailed allegations as to John Doe actions towards Plaintiff mirror the policy and custom that Hilton allegedly enforces in its franchises. (Compl. ¶¶ 12-21.)

From the pattern asserted in these allegations, the Court may infer that Hilton at this stage maintains a policy of intentional discrimination in its franchises, and has instructed Hilton Downtown Richmond and its security guards, including John Doe, to act in accordance with this policy. This conclusion also applies for Counts II and III, as Hilton reiterates the same arguments for those counts. While Hilton may later disprove this theory after discovery, the facts as pled plausibly demonstrate that Hilton directly authorized or ratified the conduct that caused Plaintiff's alleged harm.[1]

---

[1]     Plaintiff does not appear to contest Hilton's claims regarding the applicability of vicarious liability to § 1981 claims, as he does not argue this point in his Response. (Pl. Hilton Resp. at 12.) However, the Court notes that, despite Hilton's claims that vicarious liability does not exist under § 1981, courts in the Fourth Circuit disagree as to whether the doctrine of vicarious liability applies in § 1981 cases. *Compare Collin v. Rector & Bd. of Visitors of Univ. of Virginia*, 873 F. Supp. 1008, 1014 (W.D. Va. 1995) (holding that there is no vicarious liability under § 1981); *with Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 485 (D. Md. 1999) (holding that employers may have respondeat superior liability for employees' action in certain circumstances under § 1981); *Bobbitt by Bobbitt*, 19 F. Supp. 2d 512, 520 (W.D.N.C. 1998) ("The doctrine of respondeat superior is applicable to section 1981 claims."); *see also Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F. 3d 703, 717 (4th Cir. 2014) (assuming, without deciding that vicarious liability may be asserted in the context of a § 1981 claim). While the Court need not address this issue at this stage, given its' finding as to direct liability, it perceives that a set of facts might exist whereby Hilton could also be found vicariously liable for Red Coats and John Doe's actions.

For these reasons, the Court denies Red Coats, HRIP and Hilton's Motions to Dismiss as to Plaintiff's claim in Count I.

## B. Count II: Violation of 42 U.S.C. § 2000a

In Count II of his Complaint, Plaintiff alleges that Defendant violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-2, which prohibits places of public accommodation from discriminating against individuals on the basis of race or religion. (Compl. ¶¶ 48-58.) Defendants make similar arguments for Count II as they did for Count I. They contend that the Court must dismiss the claims against them under § 2000a, because Plaintiff fails to allege that Defendants denied him any accommodation. (Red Coats Mem. at 2; HRIP Mem. at 2; Hilton Mem. at 17.) Defendants HRIP and Hilton further state that this claim fails, because Plaintiff has not established standing that entitles him to injunctive relief. (HRIP Mem. at 7-8; Hilton Mem. at 22-25.) Specifically, Plaintiff failed to allege a "real and immediate threat" that he would be wronged again. (HRIP Mem. at 8.) Plaintiff responds that he pled facts sufficient to support a viable claim under this section and to show his entitlement to injunctive relief. (Pl. Red Coats Resp. at 2; Pl. HRIP Resp. at 6-8; Pl. Hilton Resp. at 8-12.)

### i. Plaintiff's § 2000a Claims Survive for the Same Reasons that His § 1981 Claims Survive.

42 U.S.C. § 2000a states in relevant part:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). Further, § 2000a-2 mandates that:

> No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by

16

> section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for
> exercising or attempting to exercise any right or privilege secured by section 2000a or
> 2000a-1 of this title.

42 U.S.C. § 2000a-2. This section "creates a private cause of action to remedy discrimination in

public accommodations affecting interstate commerce. Only injunctive and declaratory relief

(and attorneys' fees) may be awarded to a prevailing plaintiff." *Sherman v. Marriott Hotel*

*Services, Inc.*, 317 F. Supp. 2d 609, 616 (D. Md. 2004) (citing *Newman v. Piggie Park*

*Enterprises*, 390 U.S. 400 (1968)).

The elements of a § 2000a claim mirror those of a § 1981 claim, and courts regularly

apply the same analysis when deciding claims made under either section. *See Taylor v. Ahold*,

2017 WL 377935, at *1 (E.D. Va. Jan. 23, 2017) ("To establish a prima facie case of Title II

public accommodation [plaintiff] must show that she: (1) is a member of a protected class; (2)

attempted to exercise the right to full benefits and enjoyment of a place of public

accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably

than similarly situated persons who are not members of the protected class."); *Goode v. Waffle*

*House, Inc.*, 2006 WL 8438442, at *8 (E.D.N.C. Aug. 28, 2006) (granting defendant's motion

for summary judgment as to his § 2000a claims for the same reasons that it granted summary

judgment as to his § 1981 claims, because "the elements of a claim §2000a essentially mirror

those [under] §1981, and the parties have not distinguished their arguments for these two

claims"); *Sherman*, 317 F. Supp. 2d at 616 (finding that plaintiff's § 2000a claims fail, citing the

same reasons that his § 1981 claims fail).

Indeed, Defendants arguments as to Plaintiff's § 2000a claim echo those made as to

Plaintiff's § 1981 claim, and the sole issue remains whether Defendants denied Plaintiff "full and

equal enjoyment" of the hotel on the basis of his race. The Court reiterates its conclusions as to

Plaintiff's § 1981 claims, and holds that Plaintiff's § 2000a claims also survive for similar reasons. Plaintiff has plausibly alleged that Defendants denied him full and equal enjoyment of the hotel in violation of § 2000a, when the hotel's security guard accosted him in the hotel lobby, singled him out on the basis of his race and repeatedly questioned him, demanding that he provide identification to prove that he belonged in that space.

Defendant Hilton cites to *Bobbitt by Bobbitt* in support of its argument that an establishment must actually deny a plaintiff access to its facility as opposed to merely treat him with "discourteous conduct." (Hilton Mem. at 18.) However, this case considered two separate § 2000a claims by African-American patrons of the same restaurant, only the first of which Hilton cites. *Bobbitt by Bobbitt*, 19 F. Supp. 2d at 514. The court dismissed the first claim because the plaintiffs could not show more than mismanagement and "discourteous conduct" by the restaurant. *Id.* at 518. They were able to order a meal, receive it and eat it without any other substantial disruption in their dining experience. *Id.* However, the second set of plaintiffs also received and ate their food, but the court upheld their claim because they had alleged that the restaurant forced them to prepay for their meal, thereby excepting them from the restaurant's normal payment policy. *Id.* at 522. The court concluded that when a place of public accommodation singles out an individual on the basis of their race, and treats them differently under their "normal practices," this violates the individual's right to the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations" of that establishment." *Id.* at 522. In so finding, the court presented a more expansive view of the protections provided by § 2000a, as the Court likewise does here. Accordingly, *Bobbitt by Bobbitt* offers no support to Defendants on this issue.

### ii.  Hilton and HRIP's Arguments as to Injunctive Relief Also Fail.

Both Hilton and HRIP contend that the Court should dismiss Plaintiff's § 2000a claims under either 12(b)(1) or 12(b)(6), because Plaintiff fails to plead facts establishing that he has standing to support injunctive relief. (HRIP Mem. at 7-8; Hilton Mem. at 14.) Specifically, both argue that Plaintiff has failed to allege "a real and immediate threat that he will be wronged again." (Hilton Mem. at 15.)

"[F]ederal injunctive relief is an extreme remedy," *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995), and thus an injunction will not issue unless Plaintiff shows a right to relief. *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995). As part of establishing a clear right to relief, Plaintiff must first meet the requirements of standing to bring his suit. *Id.* To meet the minimum constitutional requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (citing *Lujan*, 504 U.S. at 560–61). Relevant here, to demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and particularized, as well as being actual or imminent. *Gaston Copper Recycling Corp.*, 629 F.3d at 396 (citing *Lujan*, 504 U.S. at 560); *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

Where, as here, a plaintiff seeks injunctive relief, a plaintiff must allege that there is a "real and immediate threat" that he will be wronged again. *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983) (equitable remedy unavailable absent showing of irreparable injury, which requires sufficient likelihood that plaintiff will again be wronged in a similar way); *Godbey v. Iredell Mem'l Hosp., Inc.*, 2013

WL 4494708, at *4 (W.D.N.C. Aug. 19, 2013) (explaining that to obtain injunctive relief "[a] plaintiff must . . . allege a future encounter with the defendant that is likely to lead to a similar violation of some protected right").

In making this determination, the Court will consider whether Plaintiff has alleged facts to show: (1) an intent to return to the hotel, and (2) a sufficient likelihood of facing a similar harm again upon return. At the pleading stage, a plaintiff must only allege a plausible plan to return to the establishment, rather than specific dates for a future return. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455-56 (4th Cir. 2017). The Court has previously considered several guiding factors in considering plaintiff's alleged intent to return to a place of public accommodation including "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Williams v. Lapomarda*, 2020 WL 3643466, at *6 (E.D. Va. July 6, 2020) (quoting *Daniels v. Arcade*, L.P., 477 F. App'x 125 (4th Cir. 2012) (using the four-factor test outlined in *Daniels* as guideposts in assessing this issue; *see also Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567, 573 (M.D. N.C. 2013) (considering the same factors). Courts in this district have applied the same test to claims involving hotels. *See Nat'l Alliance for Accessibility, Inc. v. Triad Hospitality Corp.*, 2012 WL 996661, at *15 (M.D.N.C. Mar. 23, 2012); *Ingram v. Conway Foods, Inc.*, 2016 WL 4061115, at *4 (D. S.C. July 29, 2016).

The application of these factors weighs slightly in favor of a finding of intent to return. Plaintiff alleges that he regularly stays at Hilton properties for his work, and that he maintains a Hilton Honors membership. (Compl. ¶ 11.) When visiting Richmond, Virginia, he chose to stay at the Hilton Downtown Richmond "over other local options because it was a Hilton franchise

hotel." (Compl. ¶ 12.)  From these facts, the Court can infer that whenever Plaintiff returns to Richmond, he would likely choose to stay at the Hilton Downtown Richmond.  Further, the fact that Plaintiff has traveled to Richmond before for work indicates a likelihood that he will return to the city again in the future.  Additionally, Plaintiff has alleged a policy and custom of discriminatory profiling, thereby sufficiently alleging a likelihood of facing similar harm upon return.  Thus, Plaintiff has alleged facts sufficient to support a claim for injunctive relief at this stage.

For these reasons, the Court denies Red Coats', HRIP's and Hilton's Motions to Dismiss as to Count II.

### C.  Count III: Violation of Va. Code § 8.01-42.1

In Count III of his Complaint, Plaintiff asserts that Defendants, motivated by racial animosity, subjected Plaintiff to acts of intimidation and harassment in violation of Va. Code § 8.01-42.1.  (Compl. ¶¶ 59-66.)  Defendants contend that the Court should dismiss Count III, because Plaintiff fails to allege that Defendants committed a hate crime against Plaintiff.  (Red Coats Mem. at 6-7; HRIP Mem. at 8-10.)  Specifically, he does not assert any conduct or statement by Defendants that rises to the level of harassment or intimidation necessary to constitute a hate crime under Virginia law.  (Red Coats Mem. at 6-7; HRIP Mem. at 8-10; Hilton Mem. at 20.)

Va. Code § 8.01-42.1(A) states in relevant part:

An action for injunctive relief or civil damages, or both, shall lie for any person who is subjected to acts of (i) intimidation or harassment, (ii) violence directed against his person, or (iii) vandalism directed against his real or personal property, where such acts are motivated by racial . . . animosity.

VA. Code Ann. § 8.01-42.1(A).  Courts have issued limited judicial interpretation of this statute, and few courts have provided further elaboration of the statute or specific standards to follow.

21

*Sines v. Kessler*, 324 F. Supp. 3d 765, 800 (W.D. Va. 2018).  However, courts have found the

elements of the statute satisfied when defendants attacked plaintiffs, *Frazier v. Cooke*, No. 4:17-

CV-54, 2017 WL 5560864, at *7 (E.D. Va. Nov. 17, 2017), and when a defendant's employee

harassed plaintiff based on racial animus, used a racial slur and implied that African-Americans

only entered the store to steal, *Berry v. Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016).

In *Johnson v. Hugo's Skateway*, the court upheld a jury's finding of liability under this

statute when the plaintiff, Johnson, the sole black patron of a roller-skating rink, became the

target of the owner's harassment.  974 F.2d 1408, 1412-15 (4th Cir. 1992).  At some point during

Johnson's visit, the manager of the rink told Johnson that he needed to come to the rink's back

office, giving no explanation as to why.  *Id.* at 1411.  When Johnson refused, the owner called

the police.  *Id.*  The court concluded that "a jury might reasonably have determined that the acts

of sending the manager to intimidate Johnson and calling the sheriff to request Johnson's

removal from the rink constituted 'acts of intimidation or harassment' under Va. Code Ann.

§ 8.01-42.1(A)."  *Id.* at 1413.  Thus, while this statute clearly covers conduct such as physical

violence and the use of racial slurs, it also covers quieter acts of discrimination such as the ones

described in *Johnson*, when a jury could determine that they rise to the level of intimidation or

harassment contemplated by this statute.

Against this backdrop, the Court finds plausible that Defendants' alleged acts could rise

to the level prohibited by the statute.  First, Plaintiff represented the only African-American

guest in the hotel lobby, and the only guest that the hotel questioned.  (Compl. ¶¶ 15-17.)

Assuming Plaintiff was equally situated in all other respects aside from his race to those white

individuals also in the lobby, the Court can infer that racial animosity motivated the security

guard's questions.  Second, a security officer and agent of hotel "accosted" Plaintiff and asked

him "repeatedly" about whether he belonged there. (Compl. ¶¶ 15-16, 41-43.) Plaintiff's allegation that Defendant John Doe "accosted" him connotes a level of aggression that nudges his allegations past mere speech and into the possibility that they constituted acts of intimidation and harassment. As in *Johnson*, a reasonable person might determine that singling out the only black patron in an establishment and requiring him to perform certain acts without any other explanation than his identity as an African-American, constituted acts of intimidation or harassment under this statute.

Defendant HRIP raises the argument that the Court should not interpret this statute to prohibit disfavored speech, as doing so would violate the Defendants' First Amendment rights. (HRIP Mem. at 10.) However, states can ban "'true threat[s]'" or 'statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual.'" *Salim v. Dahlberg*, 170 F. Supp. 897, 913 (E.D. Va. 2016) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The speaker need not intend to carry out the threat, as this prohibition "protects individuals from the fear of violence" and "the possibility that the threatened violence will occur." *Black*, 538 U.S. at 359-60. Indeed, "[t]he Supreme Court has characterized 'intimidation in the constitutionally proscribable word [as] a type of true threat,'" and therefore as unprotected by the First Amendment. *Salim*, 170 F. Supp. at 913. In assessing whether speech rises to this level, the Court considers such factors as the "defendant's body language ... [and] the volume and tone of [the] defendant's voice." *Id.* at 912.

Plaintiff's allegation that Defendant Red Coats through its agent John Doe "accosted" him suggests a level of "intimidation" contemplated by the concept of "true threats." Again, facts uncovered in discovery and a further assessment of John Doe's conduct during his encounter with Plaintiff may undermine this theory, but at this stage the Court finds plausible

that Defendants' alleged acts could rise to the level of a "true threat," and consequently receive no protection under the First Amendment.

For these reasons, the Court denies Red Coats, HRIP and Hilton's Motions to Dismiss as to Plaintiff's claim in Count III.

### D. Hilton's Argument as to Timeliness of Service

In its Motion to Dismiss, Hilton argues that the Court should dismiss the action against Hilton under Rule 12(b)(5), because Plaintiff did not timely serve the Complaint on Hilton. (Hilton Mem. at 31.) Specifically, Plaintiff filed the Complaint on February 28, 2020, but did not serve Hilton until September 1, 2020, well past the 90-day limit required by Rule 4(m). (Hilton Mem. at 24.) Plaintiff responds, arguing that the Court should extend the deadline required by the Federal Rules *ex post facto* because a compelling reason exists to do so. (Pl.'s Hilton Resp. at 14.) Plaintiff explains that counsel for both parties discussed waiver of service with Hilton's original counsel, but that in the course of serving the other defendants, its counsel neglected to send the appropriate waiver of service form for Hilton. (Pl. Hilton Resp. at 15.) Instead, Plaintiff sent a waiver of service form for HRIP in an email that copied both counsel for HRIP and counsel for Hilton. (Pl. Hilton Resp. at 15.) Plaintiff mistakenly believed it had served Hilton and waited for Hilton to file either an answer or motion to dismiss. (Pl. Hilton Resp. at 15.) When the other defendants filed their motions, Plaintiff realized his mistake and executed service of process on Hilton on September 1, 2020. (Pl. Hilton Resp. at 15.) Hilton's counsel formally appeared as counsel of record and entered an appearance on Hilton's behalf to request an extension of time to file a responsive pleading. (Pl. Hilton Resp. at 15-16.) However, this counsel later filed a motion for leave to withdraw as counsel, and the present attorneys filed Hilton's current Motion to Dismiss. (Pl. Hilton Resp. at 16.)

24

Ruel 12(b)(5) permits a defendant to challenge the sufficiency of service of process. Fed. R. Civ. P. 12(b)(5). "Once challenged, the burden of establishing the validity of service under Federal Rule of Civil Procedure 4 shifts to the plaintiff." *Sanyal v. Toyota Motor Corp.*, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014) (citing *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)). Additionally, Rule 12(b)(5) provides the appropriate vehicle for a claim of untimely service. *Fuller v. Aliff*, 2014 WL 12918937, at *3 (E.D. Va. Apr. 16, 2014). In turn, the Rule 12(b)(5) analysis relies on the same principles that govern Rule 4. *Id.* (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004)). More specifically, Rule 4(m) controls the time for service of process, and provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Accordingly, Rule 4(m) makes "unambiguously clear" that even if a plaintiff fails to serve process within 90 days, the Court must extend the time for service of process if the plaintiff can show good cause for the failure. *Robinson v. GDC, Inc.*, 193 F. Supp. 3d 577, 580 (E.D. Va. 2016). Moreover, even absent a showing of good cause, the Court may, in its discretion, extend the time for service of process.[2] *Id.* at 583.

---

[2]     The Court notes the debate in the caselaw regarding whether the Court must make a finding of good cause before extending the time to serve process. *See generally*, *Robinson*, 193 F. Supp. 3d at 581-82. Specifically, the Fourth Circuit held in *Mendez v. Elliot* that "if the complaint is not served within [90] days after it is filed, the complaint must be dismissed absent a showing of good cause." 45 F.3d 75, 78 (4th Cir. 1995). However, the 2015 revisions to Rule 4(m) make plain that the trial court has discretion to extend the time to serve process, even without a showing of good cause. *Robinson*, 193 F. Supp. 3d at 584.

When making a good cause determination, courts will examine several relevant factors. *Id.* (citing *Madden v. Texas*, 498 U.S. 1301, 1305 (1991)). Those factors include: (i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended. *Id.* (citing *Kurka v. Iowa Cty.*, 628 F.3d 953, 959 (8th Cir. 2010); *Newby v. Enron Corp.*, 284 F. App'x 146, 149–51 (5th Cir. 2008); *Carter v. Keystone*, 278 F. App'x 141, 142 (3d Cir. 2008); *Melton v. Wiley*, 262 F. App'x 921, 924 (11th Cir. 2008)).

Here, the Court finds that good cause warrants extending the service deadline, because the relevant factors weigh in Plaintiff's favor. First, the delay has not prejudiced Hilton. When Plaintiff served Hilton, the Court had not yet made any rulings in this case. Moreover, Hilton has not alleged any prejudice to its ability to litigate this case, including its ability to meaningfully participate in discovery. With respect to the remaining factors, the Court observes that Plaintiff engaged in good faith discussions with Hilton's former counsel as to waiver of service and intended to complete this process but for a misunderstanding among its own counsel in actually delivering the waiver of service form to Hilton. Hilton's former counsel appeared to consent to the late service when it entered an appearance after being served and requested more time to file its answer. (Consent Motion for Extension of Responsive Pleading Deadline (ECF No. 29).) Accordingly, the Court will not dismiss the Complaint as to Hilton based on the delay in service.

## IV.  CONCLUSION

For the reasons set forth above, the Court DENIES Red Coats' Motion to Dismiss (ECF

No. 10), HRIP's Motion to Dismiss (ECF No. 19) and Hilton's Motion to Dismiss (ECF No. 33).

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  December 4, 2020

27